## Miller v. Louisville Railway Company.

(Decided May 1, 1912.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Street Railways—Negligence—Instructions.—In this action
brought by appellant to recover damages of appellee for its
alleged negligence in running a car against him, it was not error
for the trial court to refuse to qualify the instructions given by
the addition thereto, of the words: "provided the motorman at
the time was running his car at a reasonable rate of speed," as
there was no definite testimony introduced on the trial which con-
duced to prove the motorman was not running his car at a reason-
able rate of speed.

2. Evidence.—Testimony of two witnesses, who saw the accident
from a point a square distant, as to the distance from the point
of collision at which the car was stopped, was merely specula-
tive as it was not based upon any measurement made at the time
or subsequently by the witnesses.

O'DOHERTY & YONTS for appellant.

FAIRLEIGH, STRAUS & FAIRLEIGH and HOWARD B. LEE for
appellee.

Opinion of the Court by Judge Settle—Affirming.

This action was brought by the appellant to recover
of appellee damages for injuries alleged to have been
received by him through the negligence of the motorman
in charge of one of its cars, in running the same against
him. The trial resulted in a verdict and judgment in
favor of the appellee and from that judgment this
appeal is prosecuted.

Appellant was knocked from his feet by the collision
with the car and fell with his head near the curbing of
the street. It does not definitely appear from the evi-
dence that his body was carried by the force of the
collision immediately forward; on the contrary, as he
fell near the curbing, instead of the railroad track, it is
probable that he was knocked outward and diagonally
from the track.

The accident occurred in the outskirts of Louisville
at the intersection of Ferndale avenue and the Bards-
town road. Appellant had walked from his residence
on Ferndale avenue, half a square from the intersection

of the streets, and was on his way to a grocery store, situated on the north side of the Bardstown road and a short distance east of Ferndale avenue. There was a heavy snow on the ground and, as the pavements were slippery and less safe than the streets for travel, appellant was walking in the street. Appellee has a double track on the Bardstown road, in each of which there is a curve near the intersection of Ferndale avenue with that road. After reaching the first railroad track, and when at a distance of about 40 feet from the intersection of the streets, eastwardly, appellant's attention was attracted by the approach of a west-bound car, which seemed to be coming rapidly and was ringing its gong as it neared Ferndale avenue. While watching this car, and waiting for it to pass in order that he might avoid a collision with it, an east-bound car approached him from the rear which was, as he testified, not seen or heard by him. After the west-bound car, which he was watching, had passed appellant and reached a point 25 to 40 feet ahead of him, and while he was proceeding eastwardly by the side of the railroad track and, as he claims, a distance of two to two one-half feet therefrom, the east-bound car reached and struck him. He also testified that if the east-bound car sounded its gong, or gave other signal of its approach, he did not hear it; and that he did not know how the accident occurred or what struck him. There were, however, two eye witnesses of the accident, introduced in behalf of the appellant—Lancing Alsup and Dudley Alsup—who happened to be standing in front of a meat shop on the south side of the Bardstown road, a square from the point of collision. According to their testimony they saw appellant watching the west-bound car as it came up, and also saw the east-bound car approach and strike him in the back while he was still looking in the direction of the west-bound car, which had just passed him; that appellant was not on the track when struck, but near it; and if any signals were given by the east-bound car they did not hear them. These two eye witnesses further testified that the appellant was knocked by the car a distance of 15 feet from the point of collision; and that the rear end of the car, when it was stopped by the motorman after striking appellant, was about 20 feet from where his body fell on the street.

The answer of the appellee traversed the averments

of the petition and alleged contributory negligence on the part of the appellant. All of the witnesses introduced in behalf of the appellee, including the motorman and the conductor, testified that the east-bound car, by which the appellant was struck, sounded its gong in approaching Ferndale avenue; and, according to the testimony of the motorman, as the car rounded the curve he saw appellant who was at the time walking along the street and far enough from the track to have missed a collision with the car; and that he would not have been struck by it but for his suddenly, and unexpectedly, to the motorman, stepping on or near the track in front thereof and so close to the car, that it was impossible for it to be stopped in time to prevent its striking him.

There is great doubt from the evidence whether the injuries sustained by the appellant were of a permanent character. None of his bones were broken by the collision nor were any serious bruises found upon his person. He was, however, confined to his home for several days and attended by a physician, but about two weeks after the accident had recovered sufficiently to remove to the country with his family and take up his residence near Jeffersontown, in Jefferson County. It goes without saying, however, that though no permanent disability may have resulted from his injuries, in view of his having been knocked unconscious by the collision with the car, the injuries must have been such as to have caused severe pain and suffering, both physical and mental, as well as serious inconvenience and some loss of time.

Although numerous grounds were filed by appellant in support of his motion for a new trial, only one of them seems to be relied on for a reversal; which is, that the court erred in giving instructions 3 and 4; it being insisted that each of these should have been qualified by the addition of the phrase: "Provided, that the motorman at the time was running his car at a reasonable rate of speed." Instruction No. 3 is, in meaning, an instruction on "the last clear chance," and by it the jury were told that it was the duty of the motorman to run the car at a reasonable rate of speed and under reasonable control. Instruction No. 4 is based on appellant's theory of how the accident occurred. The criticism of these two instructions upon the ground urged would be sound if there had been any definite testimony

on the trial which conduced to prove that the motorman was not running his car at a reasonable rate of speed; in other words, as stated in Goldstein's Admr. vs. Louisville Ry. Co., 115 S. W., 194:

"If there had been any evidence tending to show that the car that struck the deceased was running at an unsafe or unreasonable rate of speed at the time of the collision the court should have inserted in Instruction No. 4, after the words, 'the motorman in charge thereof' the words, 'if the car was running at a reasonable rate of speed' ".

The above excerpt is but a reiteration of the law as announced in the cases of Lexington Ry. Co., vs. Van Ladens' Admr., 32 L. R. 1007; Louisville Ry. Co. vs. Buckner's Admr., 113 S. W. 90; Louisville Ry. Co. vs. Gaar's Admr., 112 S. W. 1130; and Netter vs. Louisville Ry. Co., 134 Ky. 678, in each of which the facts, unlike those of the Goldstein case and the case at bar, authorized the giving of an instruction containing the qualification now contended for by the appellant.

The only evidence introduced in appellant's behalf, with respect to the speed of the car, was furnished by the testimony of the Alsups. Lancing Alsup, upon that point, said: "The car was going at a pretty good rate of speed; I do not know how fast it would be; he (appellant) was on the curve there where it hit him." In the deposition of Dudley Alsup we find the following statement: "I could not say what speed it was running; it was running a good gait—pretty swift—never stopped at Eastern avenue—never made any attempt to stop there—there was no one to get on—kept up the same speed."

It will be observed that neither of the Alsups stated the car was running at an unusual, unreasonable or unsafe rate of speed. They evidently had no idea of the rate of speed of the car, and therefore contented themselves with the indefinite statement; the one, that it was running at a "pretty good rate of speed" and the other that it was running "pretty swift." The several witnesses introduced in behalf of the appellee testified that the car was running at a moderate rate of speed that was neither unreasonable or unsafe.

It is, however, insisted for the appellant that evidence of the high rate of speed at which the car was running was furnished by the facts of its knocking appellant a distance of 15 feet from where it struck

him; and that when stopped the rear of the car was 20 feet from the point where his body laid on the street; and furthermore, that as the car is 42 feet in length it traveled a distance of 77 feet from the point of collision before it stopped. It must not be overlooked that these distances were fixed by the Alsups without measurement and, as they were a square away at the time of the accident, it cannot be claimed, that, under the circumstances, their opinions of the distances were more than speculative. The testimony of the motorman and the conductor was to the effect that the car was stopped much nearer the body of the appellant than as stated by the latter's witnesses, referred to, and it was not made to appear from the evidence that the car, if running at a moderate rate of speed, could have been stopped within a shorter distance than it was. Indeed, the motorman testified that it could not have been stopped sooner than it was. The uncontradicted testimony of the motorman shows that appellant until nearly reached by the car, was walking at a safe distance from the track, but suddenly stepped upon or so near the track in front of the car, as to render it impossible to stop the car before striking him.

If, as shown by appellee's evidence without material contradiction, in approaching Ferndale avenue, appellee's motorman sounded the car gong; ran the car at a reasonable rate of speed and had it under reasonable control; kept a lookout for the protection of persons upon the street on or near the railway tracks; and appellant, until about the time he was reached by the car, was walking at a safe distance from the track, and suddenly got in the way of and was struck by the car when it was so near him that the motorman could not, by the use of ordinary care, stop it in time to prevent his injuries, there should have been no recovery.

Appellant and his two witnesses failed to state that the car did not give the usual signals in approaching the intersection of Ferndale avenue and the Bardstown road, but merely testified that they did not hear the signals, if they were given. Such testimony is entitled to little weight, in view of the positive statements of the motorman, conductor and others on the car, that they were given and, of the further fact, that the attention of the appellant and his two witnesses was more particularly attracted to the west-bound car, which was closer to them, and the signals of which they did hear.

In view of the facts manifested by the record, the instructions in the form given, properly advised the jury of the law of the case; and, as the law and facts authorized the verdict, the judgment is affirmed.