### Raisor v. Lyons.

(Decided November 22, 1916.)

### Appeal from Shelby Circuit Court.

1. Easements—Extent of Right—Maintaining Gates—Intention of Parties Governs.—While the grant of a way without any reservation of a right to maintain gates does not necessarily imply that the owner of the land may not do so, if, however, it appears from the terms of the grant or the circumstances of the case that such was not the intention of the parties, the owner of the servient estate cannot maintain them across the passway.

2. Easements—Extent of Right—Obstruction.—The right of the grantee to have the way unobstructed by gates depends upon the terms of the grant, the purposes for which it was made, the nature and situation of the property subject to the easement and the manner in which it had been used and occupied.

3. Easements—Extent of Right—Intention of Parties—Unreasonable Interference.—Where the passway was paid for by the grantee and the grant thereof was contained in the same deed conveying him the land from which the passway afforded him an outlet over the adjoining land of the grantor to a turnpike, the location of the passway was well defined and the only gates across it were at points where it entered and left the grantor's land, it will not be presumed that it was the intention of the parties that the grantor, as owner of the servient estate, would have the right to erect other gates elsewhere on the passway, and the erection of such additional gates would constitute an unreasonable interference with the grantee's use of the passway.

BEARD & PICKETT for appellant.

RALPH GILBERT and BEARD & RIVES for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellee, Joseph Lyons, on February 15, 1910, sold and by deed conveyed to the appellant, C. C. Raisor, two tracts of land lying on Bullskin creek, in Shelby county, Kentucky, the first tract containing 44.51 acres, excluding a graveyard of an acre, the second containing 40.74 acres. The two tracts lie side by side and both adjoin a tract of 111 acres yet owned by the appellee and upon which he resides. The deed by which appellee conveyed to appellant the two tracts of land referred to also conveyed to the latter a passway from them through the land of appellee to the Shelbyville and Finchville turnpike.

The language of the deed conveying this passway is as follows:

"First parties (Lyons and wife) also convey to second party a passway from the above-described lands through and over the lands of Lyons this day purchased by him from W. F. Taggart. Said passway runs north and south on top of the bluff along the old road, going by the barn of said Lyons and strikes Lyons' line out in the Shelbyville and Finchville pike and is to be not over sixteen feet in width."

The passway furnishes the only outlet from appellant's lands to the Shelbyville and Finchville turnpike. At the time of the conveyance from appellee to appellant there were two gates on the passway, one at the turnpike on appellee's land and the other at the point where the passway leaves his land to enter that of appellant. Some time prior to March 4, 1914, appellee erected two other gates on the passway, one at the corner of his barn lot and the other between that point and where the passway ends at appellant's land. These gates, together with the fences connecting with them on either side, inclose a field or fields.

Appellant, complaining of the erection of the two gates last mentioned, brought in the court below this action in equity, praying a mandatory injunction compelling their removal by appellee and that he be perpetually enjoined from again erecting them or other gates elsewhere on the passway. It is alleged in the petition that the erection of the gates in question will so inconvenience appellant in his use of the passway as to constitute an obstruction thereof, and that he was conveyed by the deed from appellee such an estate or

interest in the passway as entitled him to its use free
of such inconvenience or obstructions. The answer,
aside from its admission of the erection of the gates by
appellee, traversed the allegations of the petition and
alleged that the erection of the gates was necessary to
the proper use and enjoyment of his own lands, to in-
close them and to protect the premises from the depre-
dations of the stock of appellant and others; that the
deed under which appellant obtained the right to the
passway only conveys him an easement therein and
leaves appellee the owner of the servient estate, with
the right of such use to himself of the passway as will
not interfere with appellant's full enjoyment thereof,
and that the erection of the additional gates complained
of by the latter will not and cannot constitute such in-
terference.

On the hearing the circuit court refused the injunc-
tion prayed by appellant and dismissed his petition,
from which judgment he has appealed.

It seems to be conceded that the passway in question
occupies an old roadbed which, though never claimed
by prescription or previous grant as a passway, or es-
tablished as a public road by order of the county court,
has, nevertheless, been traveled for nearly a hundred
years, as desired, by persons crossing appellee's land
from that of appellant and other adjacent lands to the
Shelbyville and Finchville turnpike. There is, there-
fore, no controversy as to the location of the passway
or its having a width of sixteen feet. The evidence in-
troduced in appellee's behalf in the lower court was
all to the effect that the erection and maintenance of
the gates at the points in controversy was necessary to
the proper enjoyment and protection of his lands; and
that of appellant was to the effect that their erection
and maintenance was unnecessary, and whether neces-
sary or not, that they unreasonably obstructed his use
of the passway. But we regard it unnecessary to enter
upon an analysis of the evidence for the purpose of de-
termining whether it preponderates in favor of the one
party or the other, as the decision of the case must be
made to rest upon the terms and meaning of the grant
under which appellant acquired the passway.

As a general rule the grantor of the passway, as the
owner of the servient estate, will be regarded as having
reserved all the rights therein that do not unreasonably

interfere with the enjoyment of the easement by the owner thereof. If the erection of gates across the passway be attempted by the grantor as one of such reserved rights, it may be done unless it is made to appear that their erection would unreasonably interfere with the enjoyment of the easement by the owner thereof, or from the terms of the grant, the nature and situation of the land subject to the easement and the manner in which it has been used, that it was not the intention of the parties that gates should be erected thereon. Our meaning may be better understood by the following excerpt from 14 Cyc. 1212:

"The grant of a way without any reservation of a right to maintain gates does not necessarily imply that the owner of the land may not do so. Unless it is expressly stipulated that the way shall be an open one or it appears from the terms of the grant or the circumstances of the case that such was the intention of the parties, the owner of the servient estate may erect gates across the way, provided they are so located and constructed as to not unreasonably interfere with the right of passage."

Numerous cases have been decided in this jurisdiction recognizing the right of the owner of premises through which a passway extends to erect gates at the points where it enters and leaves his land. Maxwell v. McAtee, 9 B. Mon. 20; Miller, etc. v. Pettit, 127 Ky. 419; Evans v. Cook, etc., 33 R. 788. But it will be found that only one of these cases, viz.: Evans v. Cook, *supra,* seems to have passed upon the question of erecting gates on the passway at a point or points other than the termini. Maxwell v. McAtee, *supra,* is cited in the foot notes and mainly relied on to support the statement of the rule quoted above from Cyc. In the opinion in that case it is said:

"It is evident, that the general grant of a passway, or right of way, over the land of the grantor at a particular place, does not confer either the possession or the right of possession of the land, but the mere right of way, or of passing over it. And nothing passes as incident to such a grant but that which is necessary for its reasonable and proper enjoyment (3 *Kent's Com.* 420; *Lyman v. Arnold,* 5 *Mason* 195). Notwithstanding such a grant there remains with the grantor the right of full dominion and use of the land, except so far as a limita-

tion of his right is essential to the fair enjoyment of the right of way which he has granted. It is not necessary that the grantor should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant. Such rights remain with him, because they are not granted. And for the same reason, the exercise of any of them cannot be complained of by the grantee, who can claim no other limitation upon the rights of the grantor, but such as are expressed in the grant, or necessarily implied in the right of reasonable enjoyment. . . . . . The statutes which authorize the establishment of private passways, on application to the county courts, contemplate the necessity or propriety of erecting gates across them, and provide that the applicant for the way shall pay the expenses. In view of this provision, and of the general convenience by which it was dictated, it might be safely assumed that the grant of a passway in general terms, over a particular part of the grantor's land, does not imply a negation of his right to erect gates at the termini of the way in entering and leaving his land, and we suppose that among the proprietors and cultivators of land, such a grant would not be generally understood as depriving the owner of the land of the right of thus inclosing his land. But even if this were not so in general, we are satisfied that the necessary implication, from the circumstances under which the grant was made and the passway used in this case, is that the right of erecting or keeping up a gate in the usual way, was not supposed or intended to be restricted, and, therefore, that the defendant was not justified in pulling down the gate erected by the plaintiff, unless from some peculiarity about it, it impeded unreasonably, and more than gates commonly do, the convenient use of the passway.''

In Miller, etc. v. Pettit, *supra*, is is said:

''It has been held that the owner of the land may ordinarily erect gates where the passway enters and where it leaves his land. Maxwell v. McAtee, 9 B. Mon. 20, 48 Am. Dec. 409; Bland v. Smith, 23 Am. & Eng. Ency. of Law, 34. On the other hand, it has been held that, where the way is acquired by prescription and is used as a lane free from gates during the period necessary for perfecting the title, none can be erected afterward. Fankboner v. Corder, 127 Ind. 164, 26 N. E. 766; Shivers v. Shivers, 32 N. J. Eq. 578. The passway in question

was established in 1843. It has been used since that time as far as the witnesses can remember. Until recent years there was a fence on both sides of it, and no gate except where the passway began at Miller's line. If the right to a passway may be acquired by prescription, we can see no reason why a passway free from gates may not be acquired in like manner; and where the passway is fenced off as a lane, and is used as such for 30 or 40 years, it must be presumed after such a great length of time, when the parties are all dead, that the persons using the passway were the owners of a right of way, as they held it and used it. On the facts shown, the court should have required the defendant to remove the gate at the pike from the passway, and to take the poles out of the branch. He should also adjudge the plaintiff $50.00 as reasonable compensation for the obstruction of her way.''

In Evans v. Cook, etc., Evans was tried and fined in the county court for obstructing a passway, acquired by a prescriptive use of more than fifteen years, by erecting gates across the same. Thereafter he instituted an action in the circuit court of the same county to enjoin the collection of the fine and further threatened prosecutions for maintaining the gates. It appears that there was an issue of fact as to whether the gates were erected at the termini of the passway or at other points on Evans' land removed therefrom, in which respect the case differs from those of Maxwell v. McAtee and Miller, etc. v. Pettit, *supra*, and makes it, as previously stated, the only case decided in this jurisdiction expressly declaring that the owner of the land over which the passway runs has no right to erect gates elsewhere than at its termini. In the opinion we said:

''The next question is whether the erection of the gates constituted an obstruction of the passway. This court has frequently recognized the right of the owner of the premises, through which a passway extends, to erect gates at the points where the passway enters and leaves his land. (Smith v. Pennington, etc., *supra*; Maxwell v. McAtee, 9 B. Mon. 20; 23 Am. & Eng. Ency. of Law, page 34.) As the burden of proof was on appellant, it was necessary for him to show that the gates erected by him were at points where the passway enters and leaves his premises. The proof utterly fails to show the exact location of the gates; indeed, from the

language used by appellant, we are inclined to the opinion that the gates, as a matter of fact, were not constructed at points where the way enters and leaves his premises. If, as a matter of fact, appellant had constructed gates at such points, such action on his part would not constitute an obstruction of the passway, and he would be entitled to the relief sought. He failed to show that the gates were so placed, and it therefore follows that he must be denied the relief prayed for.''

The rights of the appellant here involved, unlike those of the owners of the passways in the cases cited, arise out of an express contract, i. e. grant, of the passway, the deed conveying it showing that it was paid for by appellant. That is, the deed by which appellee conveyed appellant the two tracts of land also conveyed him the passway therefrom, through his (appellee's) land, to the Shelbyville and Finchville pike; and that deed states in unmistakable terms that the consideration, $6,000.00, named therein, was paid appellee both for the lands and the passway. We do not mean to say that appellee is not still the owner of the servient estate in the land embraced by the passway, but we do mean to say that appellant acquired an easement therein for which he paid a valuable consideration and which he is entitled to use and enjoy in the condition in which it appeared and was when acquired by him. The passway then had gates nowhere upon it save where it entered and left appellee's land. We would not gainsay the rule announced in Maxwell v. McAtee, supra, that the grant of a way without any reservation of a right to maintain gates, does not necessarily imply that the owner of the land may not do so; but only hold that the rule does not apply where, as here shown, the consideration for the grant, the object for which it was made, the situation and condition at the time of the land subject to the easement, and the manner in which it had been used and occupied as a passway, demonstrated that it was not the intention of the parties that the owner of the servient estate might or should erect any gates across it at a place or places other than at its termini.

This conclusion is sustained by ample authority from other jurisdictions. Thus in Welch v. Willcox, 101 Mass. 162, 100 Am. Dec. 113, it was held that, ''the grant of a way 'as now laid out,' there being no gate across the way at the time of the grant, entitled the grantee to

have the way kept open." In Garland v. Furber, 47 N. H. 301, it was held that "The grant of the 'free and uninterrupted use of a way' must be construed to mean the use of it as it then is, subject to such gates and bars as are already erected, but without further impediment."

In Baker v. Frick, 46 Md. 337, 24 Am. Dec. 506, the same doctrine was thus announced:

"The right of the grantee to have the way unobstructed by gates depends upon the terms of the grant, the purposes for which it was made, the nature and situation of the property subject to the easement, and the manner in which it has been used and occupied."

To the same effect is Newsome v. Newsome (Tenn. Chan. App. 1900), 56 S. W. 29, in the opinion of which it is declared:

"Where the way is definitely located at the time of the grant, and has always been used without gates, it will be implied that the parties intended that it should remain in this condition."

The admitted facts of the instant case clearly show that the passway when purchased by appellant and conveyed him by appellee, was definitely located and had been so located for more than fifty years. It then had no gates across it save where it entered and left appellee's land and had always been used without gates elsewhere. Appellant is entitled to the use of the passway in the same condition as when he purchased and paid for it. It may, therefore, well be said that, in view of the "Terms of the grant, the purposes for which it was made, the nature and situation of the property subject to the easement, and the manner in which it had been used and occupied," it could not have been in the contemplation of the parties that its condition should be changed by erecting across it other gates than those at the termini, which, however well maintained, would obstruct appellant's enjoyment of the easement with burdensome inconveniences and hindrances that could not be imposed by the presence of a gate at each end of the passway.

It is our conclusion that appellant is entitled to the relief prayed in his petition, hence the judgment of the circuit court is reversed and cause remanded, with directions to that court to set aside the judgment dismissing the petition and enter in lieu thereof another granting appellant the injunctive relief prayed. Whole court sitting.