## Justice, Jr. v. Justice.

(Decided November 19, 1926.)

## Appeal from Pike Circuit Court.

1. Easements.—Deed, excepting from conveyance to defendant's grantor a 10-foot road, merely reserved an easement in nature of a roadway and not in fee in strip of land 10 feet wide.

2. Easements—Owner of Servient Estate May Erect Gate 10 or 15 Steps from Outer Boundary where Roadway Appurtenant to Dominant Estate Enters and Leaves Servient Estate when Built as Near as Practicable to Outer Boundary.—Owner of servient estate may erect gates on his outer boundary where roadway appurtenant to dominant estate enters and leaves servient estate, though gate was 10 or 15 steps back from creek, forming outer boundary when built as near as practicable to outer boundary.

PICKELSIMER & STEELE for appellant.

L. J. MAY for appellee.

Opinion of the Court by Judge Dietzman—Affirming.

On the 16th day of December, 1895, W. H. Justice, who was then the owner of all the land in Fred's hollow on Grape Vine creek in Pike county, decided to divide this land into two farms. A little branch ran down this hollow, which was about a mile in length, and emptied at the mouth of the hollow into a creek, running approximately at right angles to the hollow. On the other side of and paralleling the creek was a public road. Justice divided this land by running a line about half way up the branch from its mouth from one hill top which bounded the hollow to the other hill top on the other side of the hollow. He deeded the lower tract to Dorcas Justice, and in the deed, after describing the boundary conveyed, inserted this clause: "Except a ten foot road down the said Fred hollow to the public road." By mesne conveyances this lower farm has come into the ownership of the appellee. In these mesne conveyances this ten foot road down the Fred hollow through the lower farm to the public road has always been excepted. Later Justice conveyed away the upper farm with this ten foot road through the lower farm as appurtenant thereto and by mesne conveyances it has come into the ownership of the appellant. He does not live on this upper farm and seems to visit it but sel-

dom in the course of the year for the purpose of its culti-
vation. The ten foot road down Fred's hollow is a very
rough road and barely passable with wagons. The appel-
lee has constructed, on either side of the ten foot road and
along the creek into which the branch which runs down
Fred's hollow empties, fences which run up to the points
on the hills which bound Fred's hollow. The evidence
satisfactorily shows that these fences do not entirely en-
close appellee's farm, so that it is possible for cattle by
straying over the points to get into the farm, but it also
shows that they rarely do so on account of having to climb
up the points to get to the back side of the farm, and that
therefore these fences do practically keep the cattle out
of appellee's farm. Shortly before the litigation started
out of which this appeal arises, appellee constructed a
gate between his two fences which bound the ten foot
road and about ten to fifteen steps back from the
creek between appellee's farm and the public road. Ap-
pellant admits that this gate is easy to operate and can
readily be opened by a man on horseback. When this
gate was erected by appellee, appellant brought this suit
to enjoin appellee from maintaining it and to compel him
to remove it. The lower court dismissed the appellant's
petition and he appeals.

The first question to consider is what did the com-
mon grantor of the appellant and appellee reserve or ex-
cept in his deed to Dorcas Justice so far as this ten foot
strip is concerned. It will be remembered that the ex-
pression he used was: "Except a ten foot road down the
said Fred hollow to the public road." We may also add
that the common grantor in conveying away the upper
farm in the deed used this expression in that deed: "Also
a haul road down said branch to the public road." In the
case of Higdon v. Nichols, 204 Ky. 56, 263 S. W. 665, there
was a stipulation in a deed under consideration reading:
"By an agreement between all the parties herein there is
a road 12 feet wide reserved out of this conveyance."
The question turned on what interpretation was to be put
on this stipulation. We said:

> "The rule is that a reservation cannot be ex-
> tended beyond its terms, and, if the words are doubt-
> ful, they must be construed more favorably to the
> grantee. . . . The words quoted do not reserve
> a strip of land 12 feet wide; only a road 12 feet wide

is reserved. Appellant has the right to use the whole of these 12 feet for a road, but he has no right to use it for any other purpose. If oil was found on this land, or coal, he would not be entitled to the mineral under the strip. If he did not wish to use the strip as a road, he would have no right to plant it in corn or any other crop. . . . He can use it for a road, but for no other purpose.''

It is impossible to distinguish this Higdon case on this branch of the case from the one before us. It is plain, not only from the original deed to the lower farm, but also from the original deed to the upper farm, that the grantor was simply reserving or excepting an easement over the lower farm in the nature of a roadway, and that he was not reserving or excepting from the conveyance of the lower farm the fee in a strip of land 10 feet wide. This being true we are next confronted with the proposition whether or not the owner of the servient estate may erect gates on his outer boundary where the roadway appurtenant to the dominant estate enters and leaves the servient estate. That he may do so is well settled. Miller v. Miller, 182 Ky. 797, 207 S. W. 450. But it is argued that, inasmuch as the outer boundary of the lower farm here ran with the meanders of the creek which separated that farm from the public road, and as the gate here in question was erected some 10 or 15 steps back from the creek, the appellee does not bring himself within the above stated rule. But in the Miller case *supra* it appeared that the owner of the servient estate whose outer boundary ran with the meanders of a creek had erected the gate in controversy about 75 feet back from the creek, which was about as near to the creek and the division line as it was practicable to build a fence and gate because of the fact that, if they were erected any nearer, the creek, in times of highwater, would wash them away. We held that in such a case, if the gate was erected as near as practicable to the outside boundary, its erection is within the rule permitting the owner of the servient estate to erect gates. Such is the case before us. It results, therefore, that the lower court committed no error in dismissing the appellant's petition and its judgment is affirmed.