## Mann et al. v. Phelps.

(Decided June 25, 1937.)

494

OSCAR M. SMITH, O. P. ROPER and HUBERT MEREDITH for appellants.

H. GRAHAM DAVIS for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellee sought to enjoin appellants from obstructing a passway which ran from his property through property owned by appellants. The passway was described as a neighborhood road leaving Hadden's Mill road on the north side, running north over the lands of appellant through appellee's land, on out beyond his property to the Sharon Grove road. Thirty or more years before the controversy a public road extended across the northeastern end of the Wilkins' land, now owned by appellants, striking the then McBride land (now appellees) at its southern line, continuing in an

easterly direction. About the time mentioned, this road was changed so that it was thereafterwards located on the southern boundary of the lands now owned by appellants.

From the point where the old road met appellee's property there was a private passway, beginning at a point where Dill and appellants' lands cornered, running northerly through the McBride tract to what is known as the Sharon Grove county road. After the change of the old road, the passway, obstructions in which are in controversy here, was established. This runs north from the Mill road, along a dividing line between what was then the Dill and Wilkins lands (now Mann) connecting at a point where appellants' and appellee's lands corner, with what was then a passway running northwardly to the Sharon road.

Appellee contends that after the public road was changed to its present location, the passway southwardly was opened for the mutual convenience of the then owners of the Wilkins, Dill, and McBride (now Phelps) properties, giving Wilkins a more direct route to the Mann graveyard, located on the Phelps property. It was to the advantage of Dill, who owned an acreage of bottomland north of and cut off from his main farm by the McBride land. Likewise it was an advantage to McBride by giving him a more convenient outlet to the Mill road. Phelps bought the McBride land in 1920. Appellants bought the Dill tract in 1925, the Wilkins tract in 1930. Appellee charged that in 1931 the appellants erected, over his protest, two gates across the passway in that portion between his southern boundary line and the Mill road, one about 90 yards north of the Mill road, the other at a slightly less distance from the south line of appellee's property. In the petition it is claimed that this interference is unlawful, because for more than 25 years the passway has been open, unobstructed, and so used by appellee and his predecessor.

Appellants in their answer admit the opening, continued existence, and appellee's present right to use the passway, but insist that its use by appellee and his predecessor in title has been at all times, particularly during the past 25 years, subject to the right of the servient owners to erect gates. It is charged that appellee at various times has erected and maintained obstructions across said easement, and at times had abandoned

the use and any claim to its unobstructed use, thus estopping him from the claim of its present or future unobstructed use and enjoyment. A reply joined issue. A mass of proof was taken pro and con, and upon submission the court adjudged the passway in controversy to be a public passway 20 feet wide, leading from the Mill road to appellants' lands, over which appellee and others have the right to travel, free from gates or other obstructions. The court directed the removal of all obstructions, and enjoined appellants from further obstructing the passway.

On appeal here it is contended that the proof shows that the passway has been burdened with obstructions of some sort during the past 25 years. Counsel in brief for appellant makes clear the only controversy when he says:

"It may be said that the permissive use of the passway in question has never been refused. The only question to be determined is whether or not appellants have the right to maintain gates across the passway and to the extent only that they are necessary to enable appellants to profitably cultivate and use their land without unreasonably interfering with appellee's use thereof."

Pleadings and proof bear out this concession.

There is neither claim nor attempted showing that the passway was established by grant in writing. The proof with regard to the opening of the passway, and the reasons therefor, do not show that there was or was not reserved the right to the owner of the servient estate to maintain a gate or gates. Therefore the applicable law in this case is to be determined by the use of the passway. In other words, any and all right of the unobstructed use of the passway is such a right as we have denominated a right by prescription. That right is to be determined by proof of such existing conditions running uninterruptedly throughout the statutory period, which parties correctly agree is fifteen years (Ky. Stats., sec. 2505). In the absence of a grant in writing, or an oral agreement reserving or not reserving rights, the presumption prevails that the grant is such as has been shown by the use of the passway for the statutory period. Miller v. Pettit. 127 Ky. 419, 105 S. W. 892, 32 Ky. Law Rep. 337. Expressed in other words, appellee has only the right to the use of

the passway as it has been used from its establishment, or during the statutory period prior to the bringing of the action.

The rule to be applied in this case, in view of the concession of appellants, as above mentioned, which narrows the question down to the right of the servient owner to erect a gate or gates, may be stated thus: The easement right acquired, when completed under the law, is based upon a presumption that the continued enjoyment of the easement, in such manner for the statutory period under the claim of right, was agreed to by the owner of the servient estate, and that it will be presumed that the right had its beginning in the grant. Trustees of Calhoun Baptist Church v. Spicer, 260 Ky. 562, 86 S. W. (2d) 318. With this rule in mind, we have only to look to the proof and from it ascertain, not whether appellee has a passway established by grant, or a right to such by continued use, but with this right admitted, was it permissive to the extent that the servient owner reserved the right to maintain a gate across the passway? The proof as to its use by all parties concerned (and their predecessors in title) must answer the question.

We gather from the evidence that the passway in question, when established and for sometime thereafter, had a fence on one side only. Whether on the Wilkins or Dill side is immaterial. It is shown that later Wilkins and Dill agreed between themselves to erect separate fences so as to prevent encroachment on the passway, or its use by others than McBride. This was done, not for the benefit of McBride, but for the benefit of Wilkins and Dill.

Another rule which seems to be well established by text-writers and decisions of this court is to the effect that:

> "The grant of a passway without any reservation of the right to maintain gates does not necessarily imply that the owner of the land may not do so. Unless it is expressly stipulated that the way shall be an open one, or it appears from the terms of the grant or the circumstances of the case that such was the intention of the parties, the owner of the servient estate may erect gates across the way, provided they are so located and constructed as to not unreasonably interfere with the right of passage."

14 Cyc. 1212, quoted in Raisor v. Lyons, 172 Ky. 314, 189 S. W. 234. We may add that such right is recognized, if it appear that the erection of a gate be necessary to protect the servient owner in the full use and enjoyment of his property, or some portion thereof. Justice v. Justice, 216 Ky. 657, 288 S. W. 293; Miller v. Miller, 182 Ky. 797, 207 S. W. 450.

Much of the testimony is addressed to the question as to how the passway came to be established. A change in the roadway was desired, it being sought to so change it that it would run below or near the southern line of the Wilkins and Dill lands. There was objection to this, but it was finally established as it now is. Appellee says that the result of this interfered with McBride's access to the Mill road, and that it was agreed between all the parties that McBride was to have a passway from his land out to the Mill road; one of the other parties to have a passway to the Wilkins or Mann burying ground located on the McBride land.

The contrary contention is that at one time Dill owned some bottom land on the upper side of the McBride land, and had been using a passway across the McBride land to get to and from this tract. Dill and McBride had a controversy over the use of this passway, McBride forbidding its use. Thereupon Wilkins and Dill agreed to open this passway, not for McBride's benefit, but for the benefit of Dill in getting to his upper tract. However, be this as it may, we still must get back to the question as to what the facts show in regard to the uninterrupted use of the passway by appellee and his predecessor for the statutory period. We refer again, and shall continue to refer, to the passway only from the McBride land to the Mill road. It was shown by 25 or more witnesses that since the establishment of the passway, there have been obstructions across the passway where it leaves the Mill road, through appellants' farm, on through the farm of appellee until the passway reaches the Sharon Grove road. As to proof of the situation in regard to the passway after it reaches appellee's land, there is not much contrariety.

The obstructions testified to as having been placed in the passway from appellee's land to the Mill road are mainly described as poles, pole gaps, or wire gaps. A few witnesses describe them as gates. Some of these

were placed there and so maintained by the former owners of the servient estate, or their tenants. At least one obstruction was placed in this passway by appellee, though he says it was for temporary use only.

The testimony showing these frequent and almost continuous obstructions of some character, covers a period of from 10 to 25 years. Some of the witnesses, who were more elderly, said there had been obstructions for a period dating back to the opening of the passway, which seems to have been at least 31 or 32 years prior to the suit. This testimony is of a positive nature. Many of the witnesses had traveled the passway from the Mill road to and beyond the McBride and appellee's home. They testified unequivocally to the presence at times of the obstructions, which were, seemingly, not erected to prevent persons from traveling over the passway, but to control the movement of livestock.

On the other hand, an equal, if not a larger, number of witnesses testify for appellee. Out of, perhaps, twenty-five (including appellee), only two of the number say there were no obstructions at any time, and one of these applied his testimony to that portion of the passway above appellee's land. Appellee, himself, making it quite clear that since his ownership, beginning in 1920, he had placed and maintained at will obstructions over this upper passway, which he insists was abandoned many years ago.

Whether the nonpositive testimony, or the greatest part of it, was of such character due to the manner of the question propounded by counsel or not, we cannot say. However, in many instances the question was propounded in such a way as not to require a positive or convincing reply. The answers were in most instances, "Not that I know of," or, "Not that I ever saw," or, "Not that I ever heard of."

As we read the record we cannot escape the conclusion that the testimony for appellant is of more positive and impelling character than that of appellee's witnesses, so much so that it was entitled to the greatest weight. In saying this we do not mean to challenge the credibility of appellee's testimony, or that of any of his witnesses. We simply mean to apply the rule that the greater weight should be given to such testimony as is positive and affirmative as against such as

is of negative quality. Chestnut v. Tracy, 144 Ky. 753, 139 S. W. 966; Miller v. Louisville R. Co., 148 Ky. 126, 146 S. W. 26; Consolidated Coach Corporation v. Hopkins' Adm'r, 238 Ky. 136, 37 S. W. (2d) 1.

On this phase of the case, we are of the opinion that the weight of testimony is favorable to the position taken by appellants, and that this proof shows that whether the right to erect gates was reserved in the granting of the passway, its use by all interested parties demonstrates that during the statutory period both parties exercised the right to erect and maintain obstructions in the passway. From all the proof we conclude that it shows that the parties have, for the statutory period, recognized this right up and until the erection of the two gates in question.

The final contention is that appellee did not have the right to maintain the suit below, because his wife, and not he, was the owner of what was known as the McBride land. Without elaborating this question, we are of the opinion that the suit was properly maintainable by him, since it was clear that though not the owner, he was the tenant of his wife and in occupancy of the land since 1920. Under the circumstances of this case, as shown by the proof, he could properly bring the suit, though it would have been more fitting for it to have been prosecuted in his wife's name. Carter v. Wakeham, 42 Or. 147, 70 P. 393; Foley v. Wyeth, 2 Allen (Mass.) 135; Underhill, Landlord and Tenant, vol. 1, p. 440; 19 C. J. 998; 9 R. C. L. 817; Washburne on Easements, 270.

The gates as have been erected by appellants in this passway, as said above, appear to have been erected, one 80 or 90 yards from the point where the passway goes into the Mill road, the other at a little less distance from the appellee's lower boundary line. From the proof we gather that since the purchase of the Wilkins and Dill tracts by appellants, one of the passway fence lines has been entirely done away with, if it was not destroyed or removed before the purchase by them. In fact, one of the appellants, when asked if there was a fence on each side of the road when he and his brother bought the farms, said:

"There was an old rail fence on the Henry Dill land, but nothing on the Wilkins' farm, because it had burned and the neighbors went in and stretched

three barbed wires for widow Wilkins to pasture her cow."

Appellants base their idea that they may not have the reasonable use of their property on the ground that it would be a great inconvenience to them to have two fences dividing the two adjoining fields. Appellee only contends that he is entitled to the use of the passway free from obstructions. Appellants, it seems to us, may have full and complete enjoyment of their two tracts, and appellee may have the use of the passway without unreasonable obstruction, whether there be one fence or no fence at all. The question of fence or no fence does not cut any figure in this controversy.

As we view this part of the controversy, and from an inspection of the map filed in the record, appellants may have the reasonable use of their lands by maintaining a gate at the lower terminus of the passway. Gates maintained where they appear to be now placed do not seem to be necessary for the reasonable enjoyment of their property. As they are now they appear, at least to some extent, to interfere with the reasonable enjoyment of appellee's right to the use of the passway.

With this expression of our view of the whole case, we are of the opinion that the case should be reversed, with directions to the lower court to modify his judgment so as to allow appellants to maintain one gate at or near the terminus of the passway where it approaches the Mill road.

Judgment reversed.