

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

July 6, 1951

Hon. Wayne L. Hartman
County Attorney
DeWitt County
Cuero, Texas

Opinion No. V-1200

Re: Whether county may issue
bonds or time warrants for
the purpose of purchasing
fire fighting equipment to
furnish protection to citi-
zens residing outside limits
of incorporated cities and
towns.

Dear Sir:

        In your letter of May 14th you request the opinion
of this office on the question of whether a county may is-
sue bonds or time warrants for the purpose of purchasing
fire fighting equipment to furnish protection to citizens
residing outside limits of incorporated cities and towns.
As pointed out in your letter, the only statute that au-
thorizes counties under 350,000 population to furnish fire
protection for such purposes and purchase equipment therefor
is Article 2351a-1, V.C.S.  This statute authorizes the pur-
chase of such equipment, however, only after an election for
that purpose is held, which election carries by a majority
vote.  In this connection, Article 2351a, which applies to
counties of designated population brackets, has been held by
this office in Attorney General Opinion No. 0-3417 (1941)
to be unconstitutional on the grounds that it is a local or
special law attempting to regulate the affairs of counties,
Art. III, Sec. 56, Tex. Const.  The validity of Article
2351a-1 was sustained by Attorney General Opinion No. 0-4300
(1942), and the opinion further held that payment for fire
fighting equipment should be made from the county general
fund.

        As you mention in your letter, the issuance of
bonds or time warrants for the purchase of such equipment
is not expressly authorized in Article 2351a-1.  Article
2351a-4 does expressly provide for the issuance of time
warrants and bonds for the purchase of fire fighting equip-
ment to protect county-owned property located within the
county but without the limits of any incorporated city or
town.  In view of these facts, it is your opinion that there
was no legislative intent that time warrants or bonds could

be issued under the provisions of Article 2351a-1. We agree with your conclusion.

It is manifest that bonds may not be issued for such purpose, for there is no express authority therefor granted in Article 2351a-1. The Supreme Court of Texas in the case of Lasater v. Lopez, 110 Tex. 179, 217 S.W. 373, 376 (1919), stated:

"Without special authority, a court charged with the administration of the business affairs of a county is without the power to issue negotiable securities, depriving the county of true defenses against the original creditor. It is not a power to be implied. It does not exist unless expressly conferred by law. Such is the established doctrine in this State, and has been from an early time." (Emphasis added throughout.)

In the case of Keel v. Pulte, 10 S.W. 2d 694 (Tex. Com. App. 1928), the court, in accordance with the well-established doctrine announced in the Lasater case, held that the power to issue bonds is one which is beyond the scope of power of the governing body of a city or county unless it is specially granted.

As the statute does not expressly authorize the issuance of bonds, no such power exists. As to the issuance of time warrants, a more difficult question is presented.

On September 28, 1935, this office rendered what is known as the "Somervell County Opinion." It was a letter opinion addressed to Hon. W. P. Dumas, Dallas, Texas. This opinion was given wide circulation among the various counties of the State. Among other things, it held that time warrants could not be issued against the general fund of a county. The opinion held that the current operating expenses of a county must be paid out of the general fund, and that present current operating expenses should be paid out of current funds. It was held that future tax levies for the general fund could not be encumbered to pay current operating expenses. The Somervell County Opinion was reaffirmed in 1939 by Conference Opinion No. 3095.

In the case of Lasater v. Lopez, supra, the court held, in effect, that as the county had the statutory

authority to establish public roads, it had the implied power to issue time warrants for the construction thereof. However, it is emphasized that in speaking of the issuance of time warrants, the court always referred to the making of public improvements.

In the case of Adams v. McGill, 146 S.W. 2d 332 (Tex. Civ. App. 1940, error ref.), the court held that under a statute expressly authorizing counties to provide for annual exhibits of horticultural and agricultural products, such counties have the implied power to issue time warrants for the purpose of constructing permanent improvements to the exhibition building. As in the Lasater case, the implied power to issue time warrants is limited to improvements. The court held the following:

" . . . A county, subject to the express restrictions imposed by the Constitution and general laws, has the power to issue time warrants in payment for improvements it is expressly authorized to construct, provided that the applicable regulations relating to the issuance of such warrants be observed." (146 S.W. 2d at 336.)

There are cases holding that the commissioners' court of a county has the implied power to issue time warrants to construct the county courthouse. However, we wish to emphasize that in all these cases only permanent-type improvements were involved. We know of no case expressly holding that a county has the implied power to issue time warrants against the county general fund.

However, we call your attention to the following cases: Bexar County v. Mann, 138 Tex. 99, 157 S.W. 2d 134 (1941); Hidalgo County v. Haney, 67 S.W. 2d 409 (Tex. Civ. App. 1933, error dism.); Cass County v. Wilbarger County, 60 S.W. 988 (Tex. Civ. App. 1901, error denied).

In the Bexar County case, the court considered Article 2997a, V.C.S. That statute authorizes counties to purchase voting machines and pay for the same by the issuance of bonds, warrants, certificates of indebtedness, or other obligations. The court upheld the validity of the statute and held that the bonds in question should be paid out of the general fund. The court, in effect, held that there was no constitutional inhibition which would prevent the Legislature from passing a statute authorizing the issuance of obligations payable in future years from

the general fund. The court did not hold that there was an implied power to issue warrants or other obligations payable from the general fund. The statute itself authorizes the issuance of warrants.

The original voting machine act (Senate Bill 34, Acts 41st Leg., 4th C.S. 1930, ch. 33, p. 60) provided:

"... for the purpose of paying for voting machines, such Commissioners' Court is hereby authorized to issue bonds, certificates of indebtedness or other obligations ...."

This language was changed by House Bill 121, Acts 45th Leg., 2nd C.S. 1937, ch. 52, p. 1953, to read as follows (Section 6 of Article 2997a):

"... for the purpose of paying for voting machines, such Commissioners Court is hereby authorized to issue bonds, and certificates of indebtedness, warrants, or other obligations ...."

The Legislature must have considered that the original act did not include the power to issue warrants, for otherwise it would not have added "warrants" by the 1937 amendment.

The court, in the Bexar County case, cited with approval the case of Hidalgo County v. Haney, supra. In that case the validity of certain time warrants issued against the general fund for tick eradication purposes was in issue. The court held the warrants to be valid. However, the question whether time warrants could be issued against the general fund without express legislative authority was not involved, for Section 5 of Article 1525c, V.P.C., expressly authorized the issuance of such warrants in the following language:

"... and it is hereby made their duty to appropriate moneys out of the general funds of their counties, to incur indebtedness by the issuance of warrants, and to levy taxes to pay the interest thereon, and to provide a sinking fund for the payment thereof ...."

The other case involving the issuance of obligations payable in future years out of the general fund is Cass County v. Wilbarger County, supra, which was cited

with approval in the <u>Bexar County</u> case.  However, as in the
<u>Bexar County</u> and <u>Hidalgo County</u> cases, a statute expressly
authorized the obligations in question.  The statute au-
thorized funding certain indebtednesses into bonds.

We have not found any case which has held that a
county may issue time warrants aginast the general fund
without express authority.  Conversely, in the cases which
held that there is an implied power to issue time warrants,
only permanent-type improvements were involved.

As we mentioned earlier in this opinion, Article
2351a-4 expressly authorizes the issuance of time warrants
and bonds to purchase fire fighting equipment to be used
for the protection of county-owned property located in the
county but without the limits of an incorporated city or
town.  This statute was enacted in 1949 by the 51st Legis-
lature (Senate Bill 401, ch. 575, p. 1121).  Section 2 of
the act provides, in part, as follows:

"The fact that many counties are in dire need
of fire fighting equipment, and that <u>the general
fund cannot be encumbered by the issuance of time
warrants or bonds except by specific legislative
authority</u> . . .."  (Emphasis added.)

This is clear legislative recognition that express
legislative authority is mandatory before time warrants a-
gainst the general fund may be issued.  Of course, the Leg-
islature must be presumed to know that Article 2351a-1 was
already effective.

Two opinions written during previous administra-
tions of this office, Nos. 0-4475 (1942) and 0-7054 (1946),
held that the power to issue time warrants aginst the gen-
eral fund was implied from the power to make expenditures
therefrom.  These opinions construed the <u>Bexar County</u> and
<u>Adams</u> cases as upholding this principle.  As shown in this
opinion, we disagree with such a construction, and Opinions
Nos. 0-4475 and 0-7054 are hereby overruled.  It is inter-
esting to note that Article 2351a-4 was enacted after the
rendition of those opinions.  The language quoted above
shows clearly that the Legislature did not so interpret
the statutes, and did not agree with those opinions.

There is logic in the holding that, without legis-
lative direction, the general fund in future years should
not be encumbered for the expenses of the then present
year.  Current expenses must be paid from the general fund,

and this type of expense should be paid as it accrues. The general fund in a future year should be available to pay the current expenses of such future year, and should not be saddled with the payment of the current expenses of a year ten, twenty, or thirty years in the past.

## SUMMARY

Without express authority from the Legislature, a county has no power to issue time warrants payable from its general fund. Therefore, a county is without authority to issue time warrants under Article 2351a-1 in payment for fire fighting equipment.

APPROVED:

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant

GWS-s

Yours very truly,

PRICE DANIEL
Attorney General

By *George W. Sparks*
George W. Sparks
Assistant