ILLINOIS CENTRAL RAILROAD COMPANY f/k/a Illinois Central Gulf Railroad, Appellant,

v.

H.W. ROBERTS, Jr.; Wilma Roberts; Thomas Dale Roberts; James E. Morrison, Jr.; David Samuel; Irvin Richart; Helen Stone Hayden; Eloise Allison; Thelma Cole; Jo Burgess; Virginia Ann Cobb; Johnny Cole; Helen Lee Hudson; Allan Cole; Connie Keene; Betty Sue Keene; David Dunnagan; Imogene Dunnagan; James Harper; and Hank Riley, Appellees.

No. 94–CA–2446–MR.

Court of Appeals of Kentucky.

Sept. 6, 1996.

Robert M. Connolly, Jeanne M. Picht, Stites & Harbison, Louisville, Gayle Robbins, Robbins & Robbins, Mayfield, for appellant.

Sue Ellen Morris, Roberts, Bugg & Morris, Clinton, for all appellees except Harper and Riley.

Benjamin J. Lookofsky, Mayfield, for James Harper and Hank Riley.

Before COMBS, MILLER and SCHRODER, JJ.

## OPINION

MILLER, Judge:

Illinois Central Railroad Company, f/k/a Illinois Central Gulf Railroad (hereinafter referred to as "Illinois Central"), brings this appeal from a December 5, 1988, judgment entered upon interrogatories to the jury in Hickman Circuit Court. We reverse and remand.

Sometime in the nineteenth century, the Mobile & Ohio Railroad Company laid a railroad line through Hickman County, Kentucky. The road subsequently came into the hands of Illinois Central.[1] In 1979 Illinois Central formally abandoned "operation" of the road. The rails and ties were removed, and thereafter Illinois Central attempted to convey by quit-claim deed a certain stretch of the "right of way"[2] to appellees, James Harper and Hank Riley, jointly. The conveyance specifically included the ballast rock and a bridge structure, which we assume the grantees intended to salvage.

In 1985 abutting landowners filed the instant complaint and an amended complaint against Illinois Central, Harper, and Riley.

They claimed ownership of the roadway and sought to quiet title as against Illinois Central, Riley, and Harper. In the alternative they alleged that Illinois Central and/or Harper and Riley were obligated to maintain fencing along their (the landowners') respective lands, as the railroad had done during its operation either pursuant to statute or agreement. Ky.Rev.Stat. (KRS) 256.110–.130.

In June 1987 the matter came on for trial before jury. By this time the court had concluded that, as per stipulation of the parties, Illinois Central had abandoned operation of the line. Apparently the court concluded the right of way had been conveyed to Harper and Riley by the quit-claim deed. The court submitted an interrogatory to the jury as to whether the railroad had maintained fencing on the respective properties of the abutting owners for a period exceeding fifteen years. The court was of the opinion that the landowners could acquire a "prescriptive right" to such fencing. Upon an affirmative response to this interrogatory, the jury was directed to determine the cost per footage necessary to repair or maintain the fence. Thereafter, the court computed a sum for each landowner according to his respective footage and entered a money judgment against Illinois Central, Harper, and Riley. Harper and Riley were granted indemnity on their cross-claim against the railroad. Illinois Central brings this appeal.

Illinois Central disclaims any legal obligation to fence the landowners' properties. We agree that it was error to impose any such duty, our ratiocination being that Illinois Central owned a mere right-of-way easement that was clearly abandoned, thereby extinguishing the attendant fencing obligation. After abandonment Illinois Central had no interest to convey; thus, Harper and Riley acquired no property right in the realty

---

1. These roads were immortalized by "The Ballad of Casey Jones," said by poet Carl Sandburg to be "the greatest ballad ever written on the North American continent." As a teenager in 1882, John Luther "Casey" Jones of Cayce, Kentucky, was employed by the Mobile & Ohio Railroad as an apprentice telegrapher. He was engineer of Illinois Central's No. 1 Cannonball Express at the time of the ill-fated wreck on April 30, 1900, in Vaughan, Mississippi. Joe Zentner, *The Man*

on the Throttle Was ... Casey Jones, KENTUCKY LIVING, March 1996, at 22.

2. In matters relating to railroads, the term "right of way" has two generally accepted meanings. It may sometimes refer to an intangible right of way easement and, at other times, refer to that strip of land upon which the railroad constructs the roadbed. *Black's Law Dictionary* 1489 (4th ed.1968).

by virtue of their quit-claim deed. As we shall later explain, the land beneath the easement belongs to the present owners of the servient estates.

■ We are not furnished the exact construction date of the road, nor is the record clear as to how the railroad company originally acquired the right to construct the line.[3] Present in the record are two 1897 deeds entered into between Mobile & Ohio Railroad Company and predecessors in title to a number of the landowners. We believe these deeds shed some light upon the railroad's rights at the time the line was laid.

Both deeds are dated May 24, 1897, and are virtually identical. As reflected in the premises of the deeds, the instruments indicate a settlement of an apparent dispute between the parties concerning the right of way. Upon examination the deeds appear ambiguous and inconsistent. While both deeds contain recitations or clauses seeming to convey title to a strip of land, they also reference the land as the railroad company's "right of way." Such language evidences both conveyance in fee and creation of a right-of-way easement. When this situation is presented, we think the law requires an interpretation in favor of the latter. In *Sherman v. Petroleum Exploration*, 280 Ky. 105, 132 S.W.2d 768, 771 (1939), the Court, construing a railroad deed containing similar inconsistencies, stated:

> We think it may be well said that an indefinite or ambiguous conveyance of land specifically for a railroad right of way is in its interpretation subject to the influence of a general knowledge that much railroad right of way is expressly or by operation of law limited to an easement, which has been usually found sufficient for the purposes desired.

Quoting from 16 Am.Jur. *Deeds* § 245, the Court went on to say:

> "If, in a deed to a railroad, the land conveyed is described as a right of way, the deed may be construed as giving an easement right only, and not the full fee, notwithstanding there are other words in the

deed referring to the fee simple, for such a conveyance does but imply a grant of the easement forever."

*Id.* at 772. The *Sherman* Court predicated its decision upon common knowledge that a railroad company ordinarily needs only an easement in order to construct and maintain its roadbed.

■ The preference in favor of easements has enjoyed broad acceptance as a well-founded rule of construction. Annot., 6 A.L.R.3d 973 (1966); 65 Am.Jur.2d *Railroads* §§ 73–79 (1972). In light of collective authorities, we are of the opinion it may be generally said that: Where, by instrument or deed, land is purportedly conveyed to a railroad company for the laying of a rail line, the presence of language referring in some manner to a "right of way" operates to convey a mere easement notwithstanding additional language evidencing the conveyance of a fee.

Where no evidence exists as to the right acquired by a railroad to construct its roadbed, we think it reasonable to presume that as a matter of law a right-of-way easement—and not a fee—was acquired. We base this presumption upon what we believe to be a settled bias in favor of a railroad's acquisition of an easement rather than a fee. This bias is reflected in condemnation cases wherein only a right-of-way easement is acquired. *See Rose v. Bryant*, Ky., 251 S.W.2d 860 (1952). This practice, of course, is the legitimate consequence of the concomitant necessity underlying the right to condemn. We view a conclusive presumption in favor of a right-of-way easement as being most tenable where, as here, there are no deeds of original conveyance or any other evidence bearing upon the initial authorization to lay the line.

■ A right-of-way easement is simply the privilege of the owner of one tenement to enjoy the tenement of another. The owner who enjoys the privilege to use another's land is said to possess the dominant tenement, while the owner burdened with the privilege is said to possess the servient tenement. An easement is not an estate in land,

---

3. The three common methods by which the railroad company might have acquired the right are voluntary grant or reservation, condemnation, or prescription.

nor is it land itself. It is, however, a property right or interest in land. It is an incorporeal hereditament to which corporeal property is rendered subject. *See Henry Bickel Co. v. Texas Gas Transmission Corporation,* Ky., 336 S.W.2d 345 (1960); *Lyle v. Holman,* Ky., 238 S.W.2d 157 (1951); and 25 Am. Jur.2d *Easements and Licenses* § 2 (1996). A railroad easement, like other easements, is nothing more than the right of the railroad to pass over the land of others. In short, it is a right-of-way easement. In no way does it reflect title to or ownership of the land itself.

█ We now discuss the relevant consequences of our decision. Illinois Central formally abandoned operation of the road in 1979 pursuant to an order of the Interstate Commerce Commission. It was consistent with this action that Illinois Central removed its tracks and ties and executed the quitclaim deed to Harper and Riley. The deed purported to convey all right, title, and interest, including ballast rock and bridge structure, in and to a specific stretch of the roadway. Upon these acts we are of the opinion that as a matter of law Illinois Central relinquished through abandonment all interest in the right-of-way easement. *See Mammoth Cave National Park Association v. State Highway Commission,* 261 Ky. 769, 88 S.W.2d 931 (1935).

█ There is, of course, no question that an easement may be abandoned. In *Ellis v. Brown,* 177 F.2d 677, 678 (6th Cir.1949), the Court, correctly stating Kentucky law, defined "abandonment" as "the relinquishment of a right or of property without the intention of reclaiming it or reassuming its ownership or enjoyment. In Kentucky, except in the case of a perfect legal title to a corporeal hereditament, every right or interest in, title to, or ownership of property may be lost by abandonment...." The courts of this Commonwealth have consistently recognized that railway right-of-way easements may be abandoned. *See Rose, supra;* and *Mammoth Cave National Park Association, supra.* Upon abandonment of an easement, all attendant obligations arising thereunder are extinguished, as the servient tenement is no longer burdened by the privilege of the dominant tenement. This generally is true

whether the obligations arise from statutory mandate or expressed or implied agreement, it being untenable that obligations incident to the right of way would continue after abandonment of all interest therein.

It is frequently stated that when an easement is extinguished through abandonment, the land "reverts" to the grantors or their successors. *See Rose, supra;* and *Mammoth Cave National Park Association, supra.* We are not wholly convinced of the appropriateness of the term "reverts" in such circumstances. It well may lead to some confusion because of its close association with the possibility of reverter and right of entry for condition broken. These are, of course, future interests created as a consequence of and in conjunction with the estates of fee simple determinable and fee simple on condition subsequent. C.J. Moynihan, *Introduction to the Law of Real Property* (West Publishing Co. 2d ed.1988). Regardless of the terminology utilized, the effect of a right-of-way easement's abandonment is the same: such easement no longer burdens the servient tenement. Thus, the servient owner of the strip of land constituting the right of way is entitled to enjoyment free of burden. This is the same rule applied upon the discontinuance of county or state maintained roads. KRS 178.116; 65 Am.Jur.2d *Railroads* § 85 (1972).

█ In the case *sub judice,* identity of the present owners of the servient estates is a matter to be determined by the circuit court on remand. To aid this determination, we observe: Where a railroad right-of-way easement is abandoned, the original grantor or his successor in title holds the fee in the strip of land comprising the right of way discharged of the easement. In many instances the tract of land upon which the right of way exists is divided, and portions abutting each side of the right of way are conveyed to different grantees. If the deeds do not contain language showing a contrary intent and the land is conveyed with the railroad as a boundary, each abutting landowner holds the fee to the center of the strip of land comprising the right-of-way easement. Upon abandonment each abutting landowner would thus hold the fee to the center of the

strip of land free of the easement. *See Henry v. Board of Trustees,* 207 Ky. 846, 270 S.W. 476 (1925). Where no evidence exists as to the right of a railroad to construct its roadbed and a right-of-way easement is presumed as a matter of law, abutting landowners hold to the center of the strip of land comprising the easement. Upon abandonment, they hold accordingly free of burden.

▌ We are unable to agree with the circuit court's opinion that the landowners had acquired a prescriptive right to have Illinois Central fence the right of way. There appears to be no legal basis for this conclusion. Of course, an easement may be created by prescription. *See Pickel v. Cornett,* 285 Ky. 189, 147 S.W.2d 381 (1941). A right by prescription is founded upon a presumed grant that arises from the adverse, uninterrupted, and continued use for a statutory period. *See Mann v. Phelps,* 269 Ky. 493, 107 S.W.2d 288 (1937), and *Swango v. Greene,* 155 Ky. 227, 159 S.W. 692 (1913). There was no adverse use of the fencing along the railroad right of way. We have been directed to cases the like of *Bright v. J. Bacon & Sons,* 131 Ky. 848, 116 S.W. 268 (1909), involving rights relative to party walls. We do not deem the rules pertaining to party walls dispositive of the issue at hand.

To summarize, we believe Illinois Central owned nothing more than a right-of-way easement. The easement was abandoned. Harper and Riley acquired no title or interest in the land comprising the right of way. The present owners of the servient estates now hold the underlying strips of land discharged of the easement. On remand the circuit court shall determine these owners.

For the foregoing reasons, the judgment of the circuit court is reversed, and this cause is remanded for proceedings consistent with this opinion.

All concur.