## Ford, et al. v. Rice, et al.

(Decided June 6, 1922.)

### Appeal from Floyd Circuit Court.

1. Easements—Passway—Gates.—The grantor of a passway may erect gates at the points where the passway enters and leaves his land when such gates are necessary to the full enjoyment of the land and are not forbidden by the grant.

2. Contempt—Disobedience of Judgment—Acts Constituting Contempt.—V, who owned a large tract of land, sold a portion of it to F and conveyed him a passway over the remainder. He then sold the remainder to R. R's widow and heirs brought suit against F's widow and heirs to enjoin the obstruction of the passway. In granting the relief, the judgment provided that the plaintiffs had the right to travel over the road, but not to obstruct same, and were not to interfere with the right of defendants to travel over it. Afterwards, R's widow and heirs built gates at the termini of the passway which passed through their lands for a distance of one thousand feet. There was a fence on one side, but no fence on the other side, where there was a large pasture used for grazing, and the gates were necessary to the full enjoyment of the land. The Fs then instituted a proceeding against the R's to require them to remove the gates and to show cause why they should not be punished for contempt in disobeying the judgment: Held, that as the court did not have before it any question of gates or other obstruction by the R's, the only effect of the judgment was to declare in a general way that they should not obstruct the passway or interfere with the F's right of travel, thus leaving the question as to what would constitute an obstruction or interference to be settled by the established rules of law, and as the grant did not forbid the erection of the gates and the gates were necessary for the proper enjoyment of the land, their erection did not constitute an obstruction or interference within the meaning of the judgment, so as to make the R's guilty of contempt.

C B. WHEELER for appellants.

A. J. MAY for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On November 19, 1897, Isaac W. Vanderpool sold to M. L. Ford a tract of land situated in Floyd county at

the head of Auxier branch, a stream which flows into Big Sandy river. As Ford owned a farm on the other side of the river, and the remainder of the Vanderpool farm lay between the tract sold and the river, Ford purchased from Vanderpool a right of way through the remainder of his land down the branch to the river. Ford prepared the passway for travel, and he and his widow and his heirs have continued to use it until the present time. In the year 1903, Samuel M. Rice purchased the remainder of the Vanderpool farm. In 1904 Rice repaired a fence at a turn in the road near a coal bank. He also cleaned out the coal bank and dug out about twenty-five bushels of coal.

Claiming that in repairing the fence Rice had moved it into the passway, and that he had also thrown dirt into the passway, Ford brought suit in the year 1904 to enjoin Rice from obstructing the passway. During the progress of the action Rice died, and the action proceeded against his widow and children. Ford was granted the relief asked, but the judgment was reversed, the court holding that there had been no obstruction. Rice, et al. v. Ford, 120 S. W. 288. On the appeal, the point was made that the Rices had no right to use the passway. This contention was denied, the court saying:

"Vanderpool certainly did not understand that he was conveying the exclusive right to this passway to appellee when a part of his farm and outbuildings were on one side of it and his residence and a part of his farm were on the other, nor did appellee understand that he was purchasing the exclusive right. Appellants have no right to interfere with appellee's right to the free and full use of the passway; but, when not in use by appellee, appellants certainly have a right to cross it and make other reasonable use of it, but are not to injure it."

After Ford's death, his widow and children erected a fence across the passway, whereupon the widow and children of Samuel M. Rice brought suit to enjoin the obstruction. On June 27th, 1914, the following judgment was rendered:

"This cause being submitted and heard and the court being advised adjudges that the plaintiffs, Sally Rice, Lee Roy Rice, Auburn Rice and Mattie Morell, have the right to travel over the road described in the petition and amended petition, but not to obstruct the same, and that the defendants, Elizabeth Ford, James Ford, William Ford and Hazel Ford are hereby commanded to remove

the fence they now have across the said road described in the petition and amended petition, and they are hereby enjoined from further obstructing the said road but are permitted to travel the same as well as the plaintiffs traveling over said road, and the plaintiffs are not to interfere with the right of defendants to travel over it."

On appeal the judgment was affirmed. Ford, et al. v. Rice, et al., 164 Ky. 790, 176 S. W. 206.

About five years ago the Rices constructed two gates on the passway, one at the point where their land adjoined the Ford land, and the other at the point where the passway connects with the railway right of way which lies on the west bank of the river. Thereupon the Fords moved that the action of Sally F. Rice and others, plaintiffs, against Elizabeth Ford and others, defendants, in which the above judgment was rendered, be redocketed, and that rule issue against the Rices, requiring them to remove the gates from the passway, and to show cause why they should not be punished for contempt in disobeying the judgment. After hearing the evidence the court adjudged that the erection of the gates was not an obstruction of the passway within the meaning of the judgment and discharged the rule. The Fords have appealed.

Appellants contend that as the judgment in question provided that the Rices were not to obstruct the passway or to interfere with the right of appellants to travel over it, the erection of the gates was a clear disobedience of the judgment. As the court did not have before it any question of gates or other obstructions by the Rices, the only effect of the judgment was to declare in a general way that they should not obstruct the passway or interfere with appellants' right of travel, thus leaving the question as to what would constitute an obstruction or interference to be settled by the established rules of law. In the early case of Maxwell v. McAtee, 9 B. Mon. 20, 48 Am. Dec. 409, the court said:

"Is the grantor of a passway over his land restricted by the nature and object of the grant, from erecting gates at the termini of the passway, so as to inclose his land, and must he, unless the privilege of thus inclosing it is expressly reserved, leave it open or separate it from the passway by a lane, or a fence along its entire length? Is a gate of proper width, and opening in the ordinary way, either any unreasonable or an unusual obstruction of the private right of way over the land of another? Is

it essential to the fair and convenient enjoyment of the right, that there should be no gate? The statutes which authorize the establishment of private passways, on application to the county courts, contemplate the necessity or propriety of erecting gates across them, and provide that the applicant for the way shall pay the expenses. In view of this provision, and of the general convenience by which it is dictated, it might be safely assumed, that the grant of a pasway in general terms, over a particular part of the grantor's land, does not imply a negation of his right to erect gates at the termini of the way in entering and leaving his land, and we suppose that among the proprietors and cultivators of the land, such a grant would not be generally understood as depriving the owner of the land of the right of thus inclosing his land. But even if this were not so in general, we are satisfied that the necessary implication, from the circumstances under which the grant was made and the passway used in this case, is that the right of erecting or keeping up a gate in the usual way, was not supposed or intended to be restricted, and therefore, that the defendant was not justified in pulling down the gate erected by the plaintiff, unless from some peculiarity about it, it impeded unreasonably, and more than gates commonly do, the convenient use of the passway.''

Indeed, the doctrine that the grantor of a passway may erect gates at the points where the passway enters and leaves his land, when such gates are necessary for the full enjoyment of the land and are not forbidden by the grant, is well settled by numerous decisions of this court. Miller v. Pettit, 127 Ky. 419, 105 S. W. 892; Evans v. Cook, 33 Ky. L. Rep. 788; Damron v. Justice, 162 Ky. 101, 172 S. W. 120; Salmon v. Martin, 156 Ky. 309, 160 S. W. 1058; Raison v. Lyons, 172 Ky. 314, 189 S. W. 234; Miller v. Miller, 182 Ky. 797, 207 S. W. 450. The passway in question runs through the Rice land for a distance of one thousand feet. There is a fence on one side, but no fence on the other, where there is a large pasture used for grazing purposes. Unless the gates are maintained at the termini of the passway, the Rices will be denied the full enjoyment of their land. There being nothing in the grant forbidding the erection of gates, and the circumstances being such as to make their erection necessary for the proper enjoyment of the land, we conclude

that their erection did not amount to an obstruction or interference within the meaning of the judgment, so as to make the Rices guilty of contempt.

Judgment affirmed.