# Wells v. North East Coal Co.

(Decided June 17, 1938.)

C. B. WHEELER for appellant.
HOWARD & MAYO for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and defendant below, North East Coal Company—owned the coal with the right and privilege to mine it—under a farm owned by Ireland Wells, located on Johns Creek in Floyd County, Kentucky. As a part of the easement privileges possessed by defendant—as coal owner and mining rights—defendant had constructed a tram railroad from its mine to a shipping point on a nearby commercial trunk line of railroad. A part of the tramroad traversing the farm—the surface of which was owned by Ireland Wells—crossed Johns Creek and the valley adjacent to it. It was necessary in order to level the track to construct a trestle across the valley and the creek, which was done some fifteen years prior to October 21, 1933, when the accident forming the subject matter of this litigation occurred. The valley adjacent to the creek was fertile and suitable for agricultural purposes, and to which it was appropriated by its owner, Ireland Wells. Defendant's track upon the trestle was supported by wooden piling driven into the ground, about five of which were in each bent—there being appropriate distances between the bents. Bracings necessary to strengthen the trestle (which was some 15 or 18 feet from the surface at the point where the accident happened) were employed—they being fastened to the piling and other timber of the trestle with large nails. As a part of the strengthening bracing was a runner made of sawed timbers some 10 or 12 inches wide and 2 inches thick and which were nailed to the outside piling up against the ties of the track with the same character of large nails.

On the date indicated Darwin Wells, who was about 15 years of age and a son of Ireland Wells, and an older brother—both of whom resided with their father on the farm—were working in the field next to the trestle, engaged in cutting and shocking corn that had been grown thereon during the year 1933. Darwin had cut a load of corn and had started with it to the shock in which he was placing it, and while within about 10 or 12 feet from the base of the trestle, (which extended far beyond the track above) a section of the runner referred to fell from the place it occupied on the trestle and struck him, whereby he sustained injuries to recover damages for which he, by his father as next

friend, filed this action against defendant in the Floyd circuit court. At the close of the testimony the court sustained defendant's motion for a peremptory instruction in its favor, and a verdict was accordingly rendered, followed by judgment dismissing the petition, to reverse which plaintiff prosecutes this appeal.

The privileges granted to defendant in its title papers to the coal underlying the Wells farm clearly gave to it a dominant easement right to construct and maintain the trestle for the purpose for which it was being used, but in the same manner there was reserved to the surface owner the right to appropriate and employ that reservation in any legitimate manner so as not to interfere with the rights granted to defendant, the owner of the dominant estate in such easement privileges. Likewise, under the law, the owner of such dominant privileges when appropriated by him should exercise reasonable care so as to not interfere with the proper exercise of the reserve rights and privileges of the servient estate owner in employing his reserved estate in a reasonable manner. In other words, each owner of his character of estate should, in appropriating it, exercise due respect and regard for the rights of the other estate owner and to likewise exercise reasonable care to avoid injury to the other or to anyone serving him in the enjoyment of his rights. In a case like this the owner of the servient surface has no right to employ or occupy it in any manner so as to unnecessarily obstruct or interfere with the rights of the dominant owner of the easement in the proper exercise of his rights, and the same is true with respect to the owner of the dominant easement.

The testimony in this case did not establish any designated width of right-of-way over which the tramroad was built. In that case a reasonable width necessary for that purpose would be implied. The outside piling of the bents supporting the trestle was set obliquely so as to make the base much wider or broader than the top immediately under the track, and the accident complained of happened some 10 feet or more from the outside base. For years, according to the testimony—and from the time the trestle was first built—Mr. Wells or other surface owner cultivated the surface estate up to the same line from the trestle that was done with the crop that was being harvested by young Wells and his brother at the time of the accident—thus

conferring the right to do so by acquiescence of the owner of the dominant easement, even if such right did not otherwise exist. Of course, at points along such a tramway where earth was necessary in order to build required fills or make cuts so as to level the track, it might require a more expanded use of the surface by the easement owner than at points or along points where the track was built upon a trestle. At any rate we are thoroughly convinced that young Wells at the time he received his injury was at a place requiring the exercise of reasonable care and to rely upon the assumption that the owner of the trestle—constructed and maintained under its easement rights—would do so and would maintain it in a manner not reasonably calculated to injure him and to thereby assume that such care had been taken whereby his position relative to the trestle, occupied by him at the time, was safe. The text in 19 C. J. 981, section 230, relative to the duties of the owner of a dominant easement where structures are required, says: "If the character of the easement is such that a failure to keep it in repair will result in injury to the servient estate or to third persons, the owner of the easement will be liable in damages for the injury so caused." Cases cited in note No. 95 to that text will be found to support it. The text in the same volume on page 977, section 225, also states the rule with reference to the relative rights of dominant and servient estate owners in such circumstances, and which are as we have above outlined. Compare also the cases of Crabtree Coal Mining Company v. Hamby's Adm'r, 90 S. W. 226, 28 Ky. Law Rep. 687; Imperial Elkhorn Coal Company v. Webb, 190 Ky. 41, 225 S. W. 1077; Citizens' Telephone Company v. Cincinnati, N. O. & T. P. Railroad Company, 192 Ky. 399, 233 S. W. 901, 18 A. L. R. 615.

None of the cases cited in brief for appellee are in conflict with the law so declared. Chief among them are Wells v. North East Coal Company, 255 Ky. 63, 72 S. W. (2d) 745, and Case v. Elk Horn Coal Corporation, 210 Ky. 700, 276 S. W. 573, 574. An examination of them will reveal an entirely different state of facts from those with which we are confronted in this case, which should be determined upon the principles of law applicable to its facts.

In cultivating the surface adjacent to the right-of-way of the tramroad in this case at the point where

young Wells was injured, no right of defendant as the owner of the dominant easement was in the least interfered with. The cases cited establish the principle that it was the duty of defendant in such circumstances to maintain its structure in a manner that would be reasonably safe for one exercisisng surface rights, such as young Wells was doing at the time and place; and if it should fail to do so and injury should proximately result to the one so exercising the surface rights from such failure, then the dominant easement owner should respond in damages therefor.

The testimony in this case showed that the guilty piece of timber was rotten at one end and the nail heads by which it was fastened to the piling of the trestle at that end had pulled through the decayed timber while the piling to which the other end was nailed had itself become so decayed where the nails were driven as to permit them to be pulled entirely out of the posts by the weight of the timber that fell and carried the nails with it. The condition described by most of the witnesses on that very material point of disrepair was very convincing that the unsafe condition could have been easily detected and remedied by the exercise of the slightest care, but which had not been done. Counsel for defendant seriously questioned the testimony for plaintiff that he received his injuries in the manner stated by him and his witnesses, as above outlined, and which is, in substance, an invitation for us to totally discard that testimony. Plaintiff and his brother positively testified that the injury occurred in that manner and the piece of timber—in the condition described—was found by other witnesses, who soon appeared upon the scene, and we are by no means prepared to accept the argument so advanced by defendant's counsel. The issue was at least one for the determination of the jury under appropriate submission. Without further discussion or comment we deem it sufficient to say that it is our conclusion that the court erred in directing a verdict for the defendant, and in not submitting the issues to the jury under the appropriate and approved instructions.

This case should not be confused with one where the extent of the surface of the easement right is measured by prescribed dimensions, with necessarily prescribed inhibitions against trespassing thereon, by the servient estate holder, as is generally true with refer-

ence to rights-of-way for commercial railroads, and in which relative rights of parties to joint occupation of the territory covered by the right-of-way, as so described by metes and bounds, may be different so as to call for contrary interpretation of the respective rights of the parties.

Wherefore, for the reasons stated, the judgment is reversed with directions to set it aside, and for further proceedings consistent with this opinion. All other questions are reserved.