## Jenkins et al. v. Depoyster et al.

March 2, 1945.

Arthur T. Iler for appellants.

Alfred C. Ross for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The question is the right of the owner of the surface of land to place a gate across a roadway necessarily used by the owner and operator of the mineral estate.

The appellants, plaintiffs below, are the Southern Land and Coal Company, owner, and J. L. Jenkins, the operator under contract, of a mine on a 50 acre tract on the east side of U. S. Highway No. 81, in Muhlenberg County. The Company acquired title to the minerals in 1905. It seems there were two small wagon mines operated on the eastern part of this tract, or perhaps on an adjacent tract, near Green River, perhaps as far back as 1869. There was active mining there twenty years or more ago, and intermittently in later years. There is evidence that the coal was hauled out to the road along the way or route involved in this suit, at the entrance of which on the highway, the appellees, owners of the surface, have erected a gate. There is a little

evidence that this has been an unobstructed public passway for a long time, but it is not sufficient to establish that character of passway. On the other side, it is established that the road was graded and some material placed on it about 1930 by a Country Club which had the land under lease for several years, and that during that period a gate was placed at the entrance and kept locked. It fell into decay and was abandoned. There were no mining operations then. Four or five years before the suit was filed, a mine was opened by the defendants on the eastern part of the tract and a short roadway built from it to connect with the old way, which is along the northern boundary of the tract to the highway, and its use begun. This is the only practicable way for getting out the coal, and may be deemed a way of necessity. The mine has been operated intermittently.

In February, 1944, the appellees acquired the surface of the tract. Their deed contains the reservation by the grantor of "a strip for a road opposite R. Curd's property," as described in a former deed, and a strip of land cut off for straightening the highway; also 10½ acres of the surface which had been previously sold. It is further stipulated that the deed contains the following reservation affecting the remaining portion of the land:

"This deed conveys the surface only, all of the coal, oil, gas and all other minerals and mineral substances with the right to remove the same being hereby reserved and not conveyed . . . reference hereby made to deeds that are now of record and made a part of this deed as defining and explaining very clearly the reservations made in this particular clause and paragraph. There are openings and roads on this tract of land with which the said parties of the second part are very familiar, the said Shelly DePoyster has had this tract rented for several years, and they take in its present condition with the openings to the coals, and the roads as they are now, and with no recourse on said party of the first part whatsoever or of any kind, character, or nature."

None of the deeds referred to nor a plat were placed in the record, and the route is not very definitely described. Appellants' claim may be good that it is the "road opposite R. Curd's property" although the proof is indefinite, but whether it is or not does not affect the question involved.

Appellants' deed to the minerals was executed March 31, 1905, as stated, but when the estate was first severed is not disclosed. This tract was embraced in a larger mineral boundary. The deed merely conveyed "all the coal of every description lying and being under the several tracts of land" described in the deed. Though not of concern here, it also conveyed "all other mineral deposits, oil, gas in and under" the tract.

In July, 1944, the appellees erected a new fence and a gate along the highway. The gate is 20 feet from the surfaced portion of the road, which at this point is in a considerable dip, with hills rising on the north and south. The proximity of the gate makes it dangerous for wagons and trucks to stop while the gate is being opened and closed. The plaintiffs claim, and offer some evidence in support thereof, that the business of the mine has been diminished or interfered with because customers will not go to the trouble of opening the gate or will not assume the danger. The coal is sold locally.

The judgment denied the plaintiffs an injunction requiring the defendants to remove the gate entirely but required them to place it 20 feet farther back from the highway, thereby eliminating the danger from traffic.

Although not expressly granted, unless the conveyance itself repels the construction, the grantee of the minerals in a tract of land by implication of law acquires the right to occupy and use so much of the surface as may be reasonably necessary for the beneficial and profitable working of the mines. Obviously, this includes the right of ingress and egress to the extent that it is reasonably necessary for the use of the estate granted, that is to reach and remove the minerals. The right to construct and operate proper and necessary facilities for transportation is a part of the severed property. There is, of course, the correlative right of the owner of the surface to use and deal with his estate in any legitimate manner not inconsistent with the rights acquired by the owner of the minerals. The owners must have due regard for each other and should exercise that degree of care and use which a just consideration for the rights of the other demands. The measure is the ordinary and common convenience and use under like or similar conditions. Duncan v. American Standard Asphalt Co., 97 S. W. 392, 30 Ky. Law

Rep. 84; Neal v. Finley, 136 Ky. 346, 124 S. W. 348; Himler Coal Co. v. Kirk, 205 Ky. 666, 266 S. W. 355; Horseshoe Coal Co. v. Fields, 207 Ky. 172, 268 S. W. 1078; Bailey-Ferguson Coal Co. v. Kennedy, 219 Ky. 819, 294 S. W. 467; Wells v. North East Coal Co., 274 Ky. 268, 118 S. W. 2d 555.

The appellees, of course, recognize these rights of the appellants and do not challenge their right to construct or use the road. The question is whether the erection and maintenance of the gate at the highway is an unreasonable interference.

We do not regard the reservations in the appellees' deed as of controlling significance. Insofar as they affect the present roadway they merely declare that the grantees accepted the surface with the mining easements and burdens as they existed without recourse upon the grantor. The right or absence of right to erect and maintain the gate went along with the burdens or conditions described, whatever they were.

It is elementary that the use of an easement must be as reasonable and as little burdensome to the servient estate as the nature of the easement and its purpose will permit. Buck Creek R. Co. v. Haws, 253 Ky. 203, 69 S. W. 2d 333. And in the grant of a passway unless it be expressly stipulated that it shall be an open one, or the intention may be gathered from the particular terms and circumstances that it shall be, the owner of the servient estate may erect gates across the way, provided they are so located and erected as not to interfere unreasonably with the right of passage. The right to maintain a gate is stronger if it is necessary in order to protect the servient estate or permit its full use and enjoyment. Ford v. Rice, 195 Ky. 185, 241 S. W. 835; Whitaker v. Yates, 200 Ky. 530, 255 S. W. 102; Mann v. Phelps, 269 Ky. 493, 107 S. W. 2d 288. As indicated, the conveyance of the mineral estate in this case carried as an incidence the equivalent of the grant of this passway.

The appellees use the land principally for grazing of cattle, which, of course, requires their fencing in. The use of the road by the appellants and their customers is rather infrequent and intermittent. If their mining operations were on such a large scale that the travel over the passway was practically continuous, or even more frequent, then it might be said that the gate constituted an unauthorized burden and unreasonably

interfered with their rights as owners of the mineral estate. Under the particular conditions and circumstances, it would be an unreasonable expense to require them to erect a fence along the route of this roadway. We agree with the decision of the circuit court that the gate imposes no unreasonable burden when moved back to eliminate the danger.

The judgment is, therefore, affirmed.