## Cornett v. Burchfield.

(Decided February 21, 1911.)

### Appeal from Harlan Circuit Court.

1. Actions—Ordinary and Equitable—Trial in Lower Court—Consideration on Appeal.—Parties to an action may, under the Code, try the case as an ordinary action, but when they treat it as an action in equity in the circuit court it will be so treated on appeal.
2. Sale of Land—Writing—Construction—Not Varied by Parol Testimony.—A contract for the sale of land must be in writing and the writing must be construed according to the fair meaning of the words used, and in the absence of fraud or mistake it can not be varied by parol testimony.
3. Where a joint owner buys in an outstanding superior title his purchase inures for benefit of his cotenant, but he has a lien on his cotenant's land for the money so paid.

W. F. HALL and GREENE & VANWINKLE for appellant.

METCALFE & JEFFRIES and H. C. CLAY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

About the year 1883, patents were issued to Nicholas Shell and others for about 650 acres of land in Harlan county. They conveyed to D. C. Burchfield a half interest in these lands, on January 20, 1897. The other half interest passed by certain conveyances to Missouri B. Hurst. On October 15, 1907, she and her husband sold her undivided half interest in the land to D. B. Cornett. D. C. Burchfield on October 26, 1909, brought this suit against Cornett alleging these facts, and asking that the land be divided between them. Cornett filed an answer in which he denied that Burchfield owned a half interest in the land, and pleaded that he was the owner of the whole of it. The issue was made up, proof was taken and on final hearing, the circuit court entered a judgment in favor of Burchfield as prayed. Cornett appeals.

The first question made on the appeal is that as there was no motion for new trial and no separation of the law and facts by the court, no question is presented except the sufficiency of the pleadings to support the judgment.

The petition is not styled a petition in equity, but both sides took their proof by depositions and treated the case as an action in equity. The case was conducted and decided in the lower court as an action in equity, and it involves matters of purely equitable cognizance. In disposing of a similar objection in Sallyer v. Arnett, 62 S. W., 1031, we said:

"No motion was made for a new trial within three days after the judgment was given, and there was no separate finding of law and facts by the county court. It is insisted for appellees that, as it is provided by the statute that 'the case shall be tried and decided as an ordinary action,' in the absence of a motion for a new trial, or a separate finding of law and fact, no question can be considered in this court except the sufficiency of the pleadings to support the judgment. The purpose of the statute in allowing the case to be tried as an ordinary action is to afford a speedy trial without the cost or delay of taking depositions, as in equity actions. The summary remedy thus provided applies only to the proceedings in the trial court. The statute has no reference to a proceeding subsequent to the trial. An appeal from the judgment is governed by other provisions of the Code. No motion for a new trial or separation of law and facts is required in an equity action to bring the whole case before this court. The only issue made here was whether Morton Arnett had been advanced by his father his entire share of the estate. This was strictly an equitable issue. Realizing this, both the parties took their proof by depositions, and no oral evidence was offered on the trial. The issue being exclusively equitable, and the action having been treated and tried by both the parties as an action in equity, it should be so treated in this court on the appeal. The absence, therefore, of a motion for a new trial or separate findings of law and facts, does not deprive appellants of a hearing in this court on the merits of the case."

We adhere to the rule thus laid down, and under it the case must be heard here upon its merits. The parties may under the Code try the case as an ordinary action but when they treat it as an action in equity in the circuit court, it will be so treated on appeal.

Cornett bases his claim of ownership of the land on a deed from the devisees of Charles O. Lockard, to whom a patent was issued in the year 1873. The exterior lines

of the patent contain 78,262 acres from which is deducted 32,147 acres previously patented; also 5,675 acres of other surveys, leaving in the patent 40,400 acres. This patent being ten years older than the Shell patents is superior to them. But it is insisted that Cornett failed to show that the land in controversy is not within the exclusions set out in the Lockard patent. He introduced on the trial W. T. Rice, who had made a survey of the land and a plot of it. Rice testified that the land in controversy is within the exterior lines of the Lockard patent, and that the map he files shows all the different patents that cover any part of the Lockard land; that the Lockard patent is the oldest patent that covers any of the land in controversy. In Steele v. Bryant, 132 Ky., 569, we held evidence practically such as this sufficient, prima facie, to show that the land was not in the exclusions referred to in a similar patent.

The remaining question in the case rises in this way: Burchfield insists that if his co-tenant Cornett bought in an outstanding title, his purchase inures to the benefit of both of them. Cornett concedes the rule to be that a purchase of an outstanding title by a joint tenant inures to the benefit of his co-tenants, but insists that the rule has no application here for the reason that he bought the Lockard title before he bought the Hurst title. (Venable v. Beauchamp, 3 Dana, 321; Sneed v. Atherton, 6 Dana, 276; Field v. Farmers Bank, 110 Ky., 257.) He admits that he bought the Hurst title on October 15, 1907, but he claims to have bought the Lockard title on September 17, 1907. To show this he introduces a written contract of that date entered into between him and the Lockards. So much of the writing as is material to the question here is in these words:

"Now, then, in consideration of the sum of $50 cash in hand paid, the receipt of which is hereby acknowledged, said parties of the first part give to said Cornett, an option to purchase the boundary of land hereinafter described for the sum of $2,500 for a period of thirty days from the 17th of September, 1907, upon the following terms and conditions:'"

It will be observed that this gives an option to purchase, but it does not bind Cornett to purchase or vest any title in him. He introduced some parol evidence to the effect that the writing was intended as a bond for title but this is incompetent. A contract for the sale of

land must be in writing. A writing must be construed according to the fair meaning of the words used, and in the absence of fraud or mistake, it can not be varied by parol. Cornett also insists that he accepted the option given him above by a letter written by his father and agent, A. B. Cornett, on October 11, 1907, to M. J. Holt, the agent of the Lockard devisees. That letter is in these words:

"Dear Sir:

"Referring to contract between the heirs of C. O. Lockard and Denver B. Cornett, dated September 17, 1907, I enclose herewith a deed which my son has drawn for the property contracted. I notice the deed does not make proper statement as to the payment of the $1,250 deferred payment and the certificates of acknowledgment are not properly drawn as to the wives of the grantors.

"Pleases draw a deed from these parties to Denver B. Cornett, containing the same description, warranty, timber assignment, etc. as the one enclosed and have the same returned to you by the morning of next Tuesday, October 15th, and I will be in your office in Louisville to close the deal.

"The description we have set out is the best that can be had until further surveys are made.

"Yours very truly,

"A. B. CORNETT."

There is this objection to this letter being treated as an acceptance of the option. The writer does not purport to speak for Denver B. Cornett, and he seems to contemplate not closing the deal by the letter, but closing it on October 15th, when he gets to Louisville. He encloses a deed which he says is not sufficient, and requests that the deed be drawn containing the same description, warranty, etc. The option called for a quit claim deed. The deed enclosed was not a quit claim deed. The letter therefore was not an acceptance of the option as given. After writing this letter, A. B. Cornett went to the house of Missouri Hurst, and bought her half interest in the land for $2,500; on October 15th he went on to Louisville, and on the next day closed the trade with the Lockard devisees, paying them at the rate of $1 an acre for the land. When he so closed the trade he was the joint owner with Burchfield. His purchase of the outstanding title inured to the benefit of his co-tenant; but Burchfield must repay to him his half of the money,

so expended in buying in the outstanding title of the Lockhards to the land in controversy. To this extent Cornett has a lien on Burchfield's land for the money, with interest from the time it was paid. The circuit court erred in not adjudging him a lien as above indicated. On the return of the case a judgment will be entered adjudging to Cornett a lien on Burchfield's land for one-half of the sum paid the Lockards to obtain the release of their title to the land in controversy at $1 an acre for the number of acres in the tracts in dispute.

Judgment reversed and cause remanded for a judgment as herein indicated.