## Lyles v. Graves, et al.

(Decided April 18, 1912.)

### Appeal from Allen Circuit Court.

Passway—Prescription.—Where the use of a passway has extended over a long period of years, very slight evidence will be sufficient to show that it was enjoyed under a claim of right, and when the proprietor undertakes to close the passway, the burden is on him to show that the use was merely permissive, and to explain away the presumption that its uninterrupted enjoyment for more than fifteen years was not exercised under a claim of right.

J. H. GILLIAM, THURMAN B. DIXON and W. D. GILLIAM for appellant.

GOAD & OLIVER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellees, Lattie Graves and Polly Graves, claiming that a certain passway leading from their farm and through the farm of appellant, Fount Lyles, was not only appurtenant to their land and necessary for the convenient use thereof, but was a public passway which had been used by appellees and the former owners of their land and by the public generally as a matter of right, for a period of over twenty years, brought this action against appellant, Fount Lyles, to enjoin him from obstructing the passway and from interfering with appellees' use thereof. Evidence was heard, and upon the final submission of the case, appellees were granted

the relief prayed for. From that judgment this appeal is prosecuted.

The evidence shows that the passway in question leads over the Graves-Wheat tracts of land, through the Graves land, and thence through the land of appellant and the Dinwiddies to the public road. While it is possible for appellees to get to another public road when the creek is not high by crossing their land in the opposite direction, this road is some two or three miles further to Chapel Hill than the road along the passway in question. For appellees several witnesses testified that for from twenty to forty years the passway was used not only by the former owners of the Graves land, and by the owners of other tracts of land to which the passway was appurtenant, but by the travelling public generally. At no time did any of these parties ever ask permission of those claiming to own the passway. It seems that the legal title to the passway was formerly in R. C. Dinwiddie.

In the year 1900, appellant acquired the legal title to the passway in consideration of his erecting a fence along the west side thereof. In this conveyance the property is described as "the roadbed of the old land that leads from T. F. Lyles' to the Franklin road." Prior to the time of the sale by Dinwiddie, he had for a while two gates on the passway. These gates, however, were never permanently closed, but could be easily entered and were placed there by Dinwiddie for his own convenience for the purpose of protecting his land from trespassers. Appellant's purpose in purchasing the passway was to make such changes in the gates and fences as would protect his land. For a while he had a fence leading across the passway, with bars arranged so that anyone could pass through. This fence was afterwards removed and there are now three gates along the land which can be easily opened and shut. Even after appellant acquired legal title to the passway, the weight of the evidence is to the effect that the owners of the adjoining land and the public in general continued to use the passway in the same manner that they had formerly done, and never sought permission from appellant to do so, or recognized in any way that such use was merely permissive, or subject to his control. While appellant sought to show, and did show by some witnesses, that the use of the passway was permissive, the statements of these witnesses were shaken on cross-ex-

amination, and several of them admit that they never obtained permission from any one to use the passway. Indeed, R. C. Dinwiddie, the former owner of the passway, testified on cross-examination that there had been a road there as far back as he could remember. That this road was used by anybody that wanted to use it, and that no one ever sought leave or permission from him to go through. A. B. Dinwiddie, another witness for appellant, who owns land in the vicinity and is a brother of R. C. Dinwiddie, testifies that he had known of the passway all of his life, and that he had never heard any question raised as to the right of anyone to use it. R. C. Dinwiddie testifies that he put the gates there because he thought he had a right to, but does not say that they were put there for the purpose of interfering with the use of the road. Indeed, the evidence shows that for more than fifteen years prior to the time that appellant acquired the title to the road, the road had been used by the owners of the adjoining land and the public generally as a matter of right, for a period of over fifteen years. Indeed, appellant himself seems to have recognized this right, for not until a short time before this action was brought, did he attempt in any way to interfere with such use of the road.

By a uniform line of decisions, this court is committed to the doctrine that where the use of the passway has extended over a long period of years, very slight evidence will be sufficient to show that it was enjoyed under a claim of right, and when a proprietor undertakes to close a passway, the burden is on him to show that the use was merely permissive, and to explain away the presumption that its uninterrupted enjoyment for more than fifteen years was not exercised under a claim of right. The mere fact that the owner of the servient estate never gave, and the persons using the passway never asked, permission, is not in itself sufficient to overcome the presumption in their favor arising from the long continued use of the way. Smith v. Pennington, 28 Ky. Law Rep., 1282; Anderson v. Southworth, 25 Ky. Law Rep., 776; Rogers v. Flick, 144 Ky., 844.

Appellant not only failed to maintain the burden that the use of the passway was merely permissive, but the weight of the evidence tends to show that the passway was used as a matter of right. Appellant not only knew that the road was in existence, but he actually purchased it. When he acquired title, therefore, his title was sub-

ject to the easement theretofore acquired by the adjoining land-owners and the travelling public. After a careful consideration of the evidence, we see no reason for disturbing the finding of the chancellor.

Judgment affirmed.