## Smith v. Fairfax.

(Decided March 19, 1918.)

### Appeal from Oldham Circuit Court.

1. Easements—Permissive Use—Burden of Proof.—Where the use of a passway has extended over a long period of years, very slight evidence will be sufficient to show that it was enjoyed under a

claim of right; and when the owner of the servient estate undertakes to close the passway, the burden is on him to show that the use was merely permissive and to explain away the presumption that its uninterrupted enjoyment for more than fifteen years was exercised under a claim of right.

Easements—Adverse Character of Use—Permissive Use.—The permissive use of a passway for any number of years does not deprive the owner of the servient estate of the right to close it at any time; and when the use is originally acquired by permission, the character of the passway is established and such use continues to be permissive until something is done to bring notice to the owner of the land that the character of the use has been changed.

3. Easements—Adverse Use—Presumption — Permissive Use — Evidence.—In order to overcome the presumption arising from the long and uninterrupted use of the passway that it was enjoyed under a claim of right, there must be satisfactory evidence that its use was originally acquired by permission.

4. Easements—Adverse Character of Use—Permissive Use—Evidence —Sufficiency.—In an action to enjoin the obstruction of a passway, evidence examined and held insufficient to show that the original use of the passway was acquired by permission.

J. BALLARD CLARK for appellant.

S. E. DeHAVEN and G. W. PEAK for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, Zhale Smith, brought this suit against defendant, G. M. Fairfax, to enjoin the obstruction of a passway. From a judgment in favor of defendant, plaintiff appeals.

It appears that plaintiff owns a farm of about 90 acres in the southeast section of Oldham county and south of the LaGrange and Smithfield pike. Defendant's farm consists of about 255 acres and it and two or three other farms lie between plaintiff's farm and the pike. Plaintiff's farm was formerly owned by his aunt, who inherited it from her mother, Mrs. Taylor. Defendant's farm was formerly owned by David Love, who sold it to Burton. Burton owned the farm for a while and then sold it to Chas. Sauer, from whom defendant acquired title.

According to plaintiff's evidence, he attended to his aunt's business while she was the owner of the farm. The passway in question leads from plaintiff's farm through the farm of defendant to the county road. It is fenced on both sides and follows the bed and banks of a creek. Plaintiff had known the passway for about

thirty years. During all that time he. and the public generally had used it under a claim of right without asking or receiving permission from the owners of the Fairfax land and without any objection or protest on their part until the previous November, when Fairfax closed the passway. George Fawkes, who had known the place for forty years and who had lived nearby for twenty years, W. N. Woolfork, who had known and used the passway for over fifty years, William Rockwell, who lived near the farms for forty or fifty years, G. R. Blakemore, who traveled the passway for forty or fifty years, William H. Sanford, who had known the passway for forty-five years, William Burton, a son of G. W. Burton, who formerly owned the Fairfax farm and who lived there for twenty-four years, all testified that during those periods the passway in question was a well defined road and was used by them and others, without let or hindrance by the owners of the Fairfax farm. J. T. Robertson, a tenant on the Smith farm, testified that he had known the passway for twenty-two years and had traveled it without asking permission from anyone with the exception of Mr. Fairfax, who told him that he could use the passway, when he moved on the Smith farm. When Mr. Sauer owned the farm he did not ask Sauer's permission to use the passway, but merely to go across Sauer's field when the creek was high. R. B. Way, who lived on the Fairfax place for nine years while Chas. Sauer was the owner, testified that during the time he lived there people generally traveled the passway, and he heard Mr. Sauer say that the creek was the road, and Mr. Sauer told him to lock up the gate to the road leading across the field. Ike Davis, who had known the passway for seventeen years, testified that people generally used the passway, and Mr. Sauer only complained when the people passed through his field and stated that the creek was the passway. Other witnesses including Dr. E. F. Weeks, also testified to the use of the passway by the people on the Smith farm and the public in general during certain periods of time without asking permission of the owners of the Fairfax farm and without let or hindrance on their part.

The defendant, who bought the farm from Chas. Sauer, testified that he didn't consider that anybody had the right to use the passway. So far as he was concerned, the use was merely permissive and he gave Mr.

Robertson permission to go through his farm as a neighbor. When Smith got his farm, witness told him that he would have to do something about a road. On cross-examination Fairfax testified that there was passing up and down the creek to which he never particularly objected, but tried to keep the people from passing anyway when it was muddy. He told Mr. Robertson's folks not to go through the field. F. W. Calloway, eighty-two years of age, testified that the passway in question was not considered to be a passway, but was used by the people going up and down the creek fishing. While he used the passway, he never considered that he had any right to use it. On one occasion Mr. Burton told him that there was no passway there. C. M. Taylor testified that his mother formerly owned the Smith place and that she inherited it from her father, J. W. Berry. They formerly used to go out by Mr. Woolfork's, but his father met Mr. Love, who owned the Fairfax place, and Love told him to come up the creek. After that time they used the creek. Mr. Love told his father that he could have the road as long as he stayed there. This occurred some time before the war. After Mr. Love died they continued to use the passway and nothing further was said. Chas. Sauer testified that he gave Mr. Robertson permission to go through his place. While he owned the farm he never knew of anybody using the passway as a matter of right. In going through his place, the people went anywhere they wanted to go. On cross-examination he stated that he didn't give Mr. Robertson permission to go through the field but to use the passway. After he got possession of the farm, no one ever used the passway but Mr. Robertson. W. O. Head testified that some of the people thought that they had the right to use it. When he used it he never asked permission from anyone.

The principles of law applicable to a case of this kind may be briefly stated as follows: Where the use of a passway has extended over a long period of years, very slight evidence will be sufficient to show that it was enjoyed under a claim of right; and when the owner of the servient estate undertakes to close the passway, the burden is on him to show that the use was merely permissive and to explain away the presumption that its uninterrupted enjoyment for more than fifteen years was exercised under a claim of right. Lyles v. Graves, et al., 147 Ky. 807, 145 S. W. 762; Smith v. Pennington, 122

Ky. 355, 91 S. W. 730, 8 L. R. A. (N. S.) 149. On the other hand, the permissive use of a passway for any number of years does not deprive the owner of the servient estate of the right to close it at any time; and when the use is originally acquired by permission, the character of the passway is established and such use continues to be permissive until something is done to bring notice to the owner of the land that the character of the use has been changed. Fightmaster v. Taylor, 147 Ky. 469, 144 S. W. 381. But in order to overcome the presumption arising from the long and uninterrupted use of the passway that it was enjoyed under a claim of right, there must be satisfactory evidence that its use was originally acquired by permission. Schwer v. Martin, 29 Ky. Law Rep. 1121, 97 S. W. 12.

The evidence is practically uncontradicted that plaintiff and those through whom he claims, as well as the public in general, used the passway in question for a period of fifty years without interruption or interference by the owners of the servient estate. Practically the only circumstances relied upon to overcome the presumption that the passway was enjoyed under a claim of right are that Robertson, a tenant of plaintiff, requested permission to use the passway and that Mr. Taylor stated that he was present when Love told his father that he could use the passway so long as he occupied the farm now owned by plaintiff. Clearly, if plaintiff's right to the passway had been established the mere request by his tenant for permission to use the passway could not destroy that right. Schwer v. Martin, *supra.* When we come to consider the conversation which Taylor claims to have heard between Love and his father, we find that it occurred more than fifty years ago, and that Love then gave Taylor's father permission to use the passway so long as he occupied the Smith farm. After that time, however, the ownership of the two farms frequently changed hands, and after both Love and Taylor's father parted with title the use of the passway continued for a long period of time without interruption or interference on the part of the owners of the Love land. Viewing the case in the light of the location of the two farms, the well defined character of the passway, and the long and uninterrupted use of the passway, we do not regard Mr. Taylor's recollection of the conversation that occurred over fifty years ago as satisfactory evidence that the original use of the pass-

way was acquired by permission, and therefore conclude that the chancellor erred in denying plaintiff the relief prayed for.

Judgment reversed and cause remanded for proceedings consistent with this opinion.