## Daniel v. Shaver.

(Decided June 10, 1919.)

Appeal from Campbell Circuit Court.

1.   Easements—Passways—Presumptions—Burden   of   Proof.—The
     use of a passway by one landowner over the lands of another

for a great number of years, will be presumed, in the absence of a contrary showing, to have been as a matter of right and not by permission; and in litigation over the right of way one assertting that the use was by permission has the burden of establishing that fact.

2.   Easements—Passways—Prescriptive Use.—A passway acquired by prescriptive use vests in the claimant as securely and to the same extent as if the right were by grant, and where one has held and used a passway as a matter of right for the statutory period, his right becomes vested and is not lost by non-user or by short intervals of ouster less than the statutory period required to perfect title by adverse possession.

3.   Easements—Passways—Grant of.—A grant of a passway at another place over the lands of the grantor will not adversely affect a more convenient passway held and claimed by the grantee over the grantor's land.

C. D. IHRIG for appellant.

W. M. RARDIN for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Claiming a prescriptive right to a passway over the lands of appellant, Eugene Daniel, S. P. Shaver, instituted this action for a mandatory injunction against Daniel to require him to remove an obstruction which he placed across the passway in question, and to recover $250.00 damages. Daniel owns a farm lying on both sides of the turnpike. Adjoining this farm Shaver owns two adjoining tracts which together contain about thirty acres, but Shaver's tract lies away from any road or passway except the one in controversy. A part of Daniel's land lies between Shaver's land and the pike. All this land was formerly owned by Thomas Daniel, but he divided it and sold it off in small tracts, and after passing through different hands Shaver became the owner of the two small tracts known as the Ackerman land and Eugene Daniel, a grandson of Thomas Daniel, owns the old Daniel homestead and occupies the same house in which his grandfather lived.

The passway in question is about 264 feet long and extends from Shaver's line over the land of Daniel to the pike. It was first established about 1861 or 1862, when Ackerman purchased the lands from old man Thomas Daniel. Gates were maintained at each end of the passway; one at the pike and one at the Ackerman line. There was no fencing on either side of the pass-

way. Ackerman lived on his land from 1861 up to 1900, and at all times traveled and used the passway in question. The members of his family, his servants and employees made use of the passway at all times at will. According to the testimony of Mrs. Ackerman, now seventy-six years of age, her husband, who is now dead, made some arrangement with old man Thomas Daniel concerning this passway at the time he entered on and took possession of his home place, or soon thereafter, by which he had the free and uninterrupted use thereof until he moved away in 1900, a period of more than 38 years. True there is some intimation that many years before Ackerman left his place he and Daniel had some controversy about the right of way, and Ackerman paid Daniel $35.00 in money, but whether this was paid for a grant of a right of way or in some other respect, is not made clear. At any rate Ackerman and his successors in title have claimed and used the passway ever since, without let or hindrance from Daniel. After Ackerman moved away his tenants used the passway as a matter of right and after the property was conveyed each succeeding vendee of Ackerman claimed and used the right of way as appurtenant to the farm. Each one testifies that he claimed the use of the passway as a matter of right and not by permission of Daniel.

On the other hand Daniel and his witnesses say that the passway was closed up from 1901 to 1902; that no one lived in the Ackerman house and no one traveled over the passway. They also state that the use of the passway was interrupted at different times while Ackerman lived there, but this evidence is all very indefinite, vague and uncertain. If, as claimed by Shaver, Ackerman held and used the passway for as much as the statutory period from 1861, when he first entered, his right to the passway by prescription was fully established and was not lost by any attempted interruption by old man Thomas Daniel, or any of his successors in title, by closing the passway for a few days or for a year or so. Once a passway is acquired by prescription the right continues, though not used, indefinitely, and the prescriptive owner does not lose his right to the passway unless it be adversely held by another for the period prescribed by the statute. Title by prescription is as strong as title by grant or deed; and it is not lost by failure to use or by adverse possession for any term less than the statutory period, fifteen years. In 9 R. C. L. 812, it is said

that an easement may be abandoned by unequivocal acts showing a clear intention to abandon and terminate the right, or it may be done by acts *in pais* without deed or other writing. The same writer says it is a well established rule that if, during the period required to create a prescriptive right, the easement is in the open, visible, notorious and hostile possession of the owner of the servient tenement, it will be extinguished even when resting in grant. Indeed, in some courts the rule is that an easement acquired by grant is one that can be lost only by such adverse possession. Conformably to the rule generally, the adverse possession in order to be effective must be open, unequivocal, continued, and equivalent to an ouster of the dominant owner, and incompatible with the possession and use of the easement by him. . . . The inclosure of the way by the owner of the servient tenement does not constitute an adverse possession unless it is inconsistent with the right which is sought to be extinguished. . . . In general the elements essential to adverse possession sufficient to extinguish an easement are very similar to those involved in an acquisition of an easement by prescription. In the case of Hook v. Joyce, 94 Ky. 450, we held that an easement may be acquired and perfected by prescription so as to pass by descent to heirs at law; and whether acquired by deed or by possession may be lost by entry and continuous adverse possession for the statutory period of fifteen years. See also 14 Cyc. 1194. The same rule is recognized and reasserted in the case of Clay v. Kennedy, 72 S. W. 815, where we held that a prescriptive right once acquired "can only be defeated by such adverse possession as would defeat a right of entry on real estate."

The rule is that where a passway has been used for a long term of years and the statutory period has elapsed, the presumption is that the use was by grant and as a matter of right and hostile to the owner of the servient estate; and if the owner of the servient estate asserts that the use was by permission, the burden is upon him to establish this fact. In the case of Lyles v. Graves, 147 Ky. 809, in considering a question very similar to the one here, we said: "The doctrine that where the use of a passway has extended over a long period of years, very slight evidence will be sufficient to show that it was enjoyed under a claim of right, and when a pro-

prietor undertakes to close a passway, the burden is on him to show that the use was merely permissive and to explain away the presumption that its uninterrupted enjoyment for more than fifteen years was not exercised under a claim of right.'' To the same effect are Smith v. Pennington, 28 R. 1282; Anderson v. Southworth, 25 R. 776; Rogers v. Slick, 144 Ky. 844; Wilkins v. Barnes, 79 Ky. 233; O'Daniel v. O'Daniel, 88 Ky. 185; Bowen v. Cooper, 23 R. 2065; Hamilton v. Fuson, 165 Ky. 182.

Applying this rule to the facts before us, Shaver having established the use of the passway by himself and his predecessors in title for fifty-four years before the commencement of this action, the burden was upon Daniel, the owner of the servient estate, to show that the use of the passway was by permission and not by claim of right on the part of Ackerman and his grantees. While there is some evidence for Daniel tending to show that the use was permissive, it was not sufficient to overcome the presumption in favor of Shaver and his predecessors in title that the use was as a matter of right. Indeed, we think the preponderance of the evidence upon the whole case is to the effect that Ackerman claimed and used the passway as a right appurtenant to his lands.

The mere fact that there was another passway from the pike to the small tract of land purchased by Ackerman from old man Thomas Daniel, after the establishment and use of the passway in controversy, did not militate against the right of Ackerman and his successors in title to claim and use the passway from his house to the pike. From the evidence in this case we learn that the house and passway in controversy are on an elevation, while the second passway spoken of is in a valley or at the foot of a slope. This second passway was granted by Daniel in connection with a second purchase of land by Ackerman and long after Ackerman began claiming and using the passway in front of his house.

The chancellor having found the fact that the use of the passway by Shaver and his predecessors in title was as a matter of right and not by permission, and upon this finding, adjudged appellee Shaver entitled to the use of the passway, and granted a perpetual injunction restraining Daniel from obstructing the passway and awarded Shaver nominal damages, we would not be justified in reversing the judgment, unless the finding of fact by the chancellor was against the weight of the evidence,

which does not appear to be true here. Thomas v. Vallandingham, 181 Ky. 649; Matney, et al. v. Edmonds, 179 Ky. 243; Bond v. Bond's Admr., 150 Ky. 389; Wathen, et al. v. Wathen, 149, Ky. 504; Byassee v. Evans, 143 Ky. 415; Kirkpatrick's Exor. v. Rehkopp, 144 Ky. 134.

Judgment affirmed.