## Pennington v. Pennington's Adm'r et al.
Jan. 17, 1939.

MARCUS C. REDWINE and JOHN A. KECK for appellant.
HENRY C. ROSE and LITTLETON & JARVIS for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Appellant, Oceola Pennington, filed this action in June, 1936, against his brother, A. O. Pennington, who has died since the commencement of the action, and his sisters, Mrs. Ida Green and Mrs. Auda White, appellees, alleging that the estate of his father, W. L. Pennington, who died intestate in February, 1932, had been improperly settled. He sought an accounting in order that he might recover his alleged legal distributive share of the estate. In October, 1936, the court transferred the cause to the equity docket and referred it to the master commissioner to hear proof and settle the accounts of the parties. The record does not show that the case was handled by the master commissioner, however, and on the 5th day of July, 1937, counsel for both parties agreed to the following order:

"By agreement of the parties as shown by their signatures, by counsel, it is ordered that this case be and it is hereby assigned for oral hearing before the chancellor, (and any issue the court deems expedient to be submitted to a jury) for Tuesday, July 20th, 1937 at One p. m. or the second day of the July 1937 term of this Court."

Before the trial began appellant moved the court for an issue out of chancery to try the question before a jury as to whether appellant owed his father, W. L. Pennington, one note or two notes for $1,000 each. This motion was overruled.

The chancellor heard the case on July 20th, and entered judgment on that date dismissing appellant's petition, to which appellant excepted and prayed an appeal to this Court which was granted. At the conclusion of all the evidence, and before the judgment was entered, appellant moved the court to exclude from consideration a writing signed by the parties to the action relating to the settlement of W. L. Pennington's estate. This mo-

tion was overruled. At the same time appellant tendered and offered to file an amended petition and reply to appellee's answer, to which appellees objected. The court sustained the objection. This amended petition and reply set out that (1) appellant owed his father only one rather than two notes for $1,000; (2) he had not received his one-fourth share of the store owned by his father and A. O. Pennington; (3) A. O. Pennington had not properly accounted for the personal property of his father and had not paid appellant his share thereof; and (4) appellant did not agree at any time to accept two $1,000 notes in full as his share of his father's estate and at the time the two notes were delivered to him he did not know the facts relative to the amount and kind and division of the estate.

Appellant contends that the following errors were committed: (1) The answer was not good on demurrer; (2) the court erred in not allowing appellant a trial before a jury on the question as to whether he owed his father one or two notes for $1,000 each; and (3) because the record is overwhelmingly in favor of appellant's contention. On January 7, 1938, appellees filed a motion before this Court to strike the stenographer's transcript of evidence from the record because (1) no bill of exceptions was tendered or offered to be filed; (2) there was no order making the transcript a part of the record at the July 1937 term of court when judgment was entered; (3) there was no request for time in which to prepare and file a bill of exceptions, nor was there an order to that effect; and (4) the transcript of evidence which was examined and approved by the chancellor on December 2, 1937, was not filed in the office of the circuit clerk until December 1, 1937. Both parties filed briefs on this motion, but we are passing this question in view of the fact that we have examined the record carefully and have reached the conclusion that the judgment of the chancellor should be affirmed.

Since appellant's third contention relates primarily to the evidence offered we will discuss it in connection with a review of the facts in the case. Appellant, appellees and their mother, Thursy Pennington, met together shortly after the death of W. L. Pennington in January, 1932, and signed the following agreement relative to the disposition of the estate of their father, W. L. Pennington:

"February 29, 1932. We, the undersigned children of W. L. Pennington, deceased, agree to the following: To have A. O. Pennington draw the money of W. L. Pennington from the Bank of Blaine, Ky. and issue two checks for $1000.00 each to the two girls, Audie White and Ida Greene and to deposit the rest for Mrs. W. L. Pennington to be used for her needs alone, checked out by her alone for her personal needs only if required. The rest to be divided equally between the four at any time she sees fit and that no administrator be appointed. Signed: Audie White, Ida Green, O. Pennington, A. O. Pennington, Thursy her mark Pennington."

This statement was introduced on cross examination by Luther Burton, cashier of the Bank of Blaine, who testified for appellant. Appellant objected to admission of the statement. He admitted, however, that he had signed the agreement, but stated that he did so under a mistake.

While some of the evidence relating to the circumtances leading up to this settlement was incompetent, there is sufficient competent evidence in the record to show that, prior to his death, W. L. Pennington told his children how he wanted his estate divided. At the time of his death W. L. Pennington owned no realty, having deeded a farm to a son of A. O. Pennington, subject to its being occupied by appellant until the death of his father. W. L. Pennington and A. O. Pennington owned jointly a store which at the time of the death of W. L. Pennington had a stock of goods worth approximately $1,600. In addition to $200 or $300 worth of live stock, he had $2,000 on time deposit in the Bank of Blaine and $979.54 in that bank on checking account. Each of his daughters owed him a note for $500, which notes were cancelled and delivered to them at the time the estate was settled. Appellant admitted that he owed his father a note for $1,000, executed on September 2, 1925, with his brother-in-law, J. D. Green, as surety. He said that this note had been given his father as security for his father having signed his note for $1,000 due the Bank of Blaine. The note due the bank was paid by W. L. Pennington. The second $1,000 note, the principal item of this controversy, was executed April 20, 1927. This note was made to W. L. Pennington and signed by ap-

pellant and his wife. Appellant testified, however, that he signed his wife's name to the note. It is appellant's contention that this note represented a renewal of the note executed to his father in 1925. He stated without objection that his father had told him that he did not want to hold the old note and that he wanted his and his wife's note. He said that his father drew up the new note and that he signed his name and his wife's name to it, and that his father told him he would destroy the old note. The first note was due 12 months after date and the second was due four months after date. The first note had a figure of $338 on it, while the second one had a figure of $250 on it. When asked by the court what these figures represented appellant stated that they must have represented interest. After the death of W. L. Pennington it appears that these notes were delivered to appellant by his mother prior to the time the settlement agreement referred to was executed on February 29th, 1932.

While there is some conflict in the evidence as to the division of the part of the estate represented by W. L. Pennington's part of the stock in the store and the money remaining after the death of Mrs. Thursy Pennington, in 1934, the weight of the evidence substantiates the conclusion that an equable division was made between appellant and appellees.

The circumstances surrounding the question as to whether appellant owed his father one or two notes for $1,000 each are not favorable to appellant's contention. W. L. Pennington's estate was small, consisting of approximately $7,000, including all the notes mentioned. All of the parties involved live in or about the small town of Sandy Hook. Even appellant testified, without objection, that his father called the children together some time before he died, when he said that there would be about $2,000 for each child. The notes themselves and the circumstances surrounding their execution do not tend to substantiate appellant's contention that the second one represented a renewal of the first one. Furthermore, the record indicates that appellant was present when the estate was divided and that he took an active part in the division. According to his testimony it was not until four years after the death of his father that he came to realize that he had been charged with two $1,000 notes in the settlement of the estate. It is

our conclusion, therefore, from a careful review of the record that the judgment of the chancellor should be upheld. We have frequently held that, where the findings of the chancellor are supported by substantial evidence, and the evidence is such as to leave the mind in doubt concerning the truth of the controversy, the chancellor's findings will not be disturbed. Blackburn's Adm'x v. Union Bank & Trust Co., 269 Ky. 699, 108 S. W. (2d) 806; Hite's Adm'r v. Hite's Ex'r, 265 Ky. 786, 97 S. W. (2d) 811; Ream v. Fugate, 265 Ky. 463, 97 S. W. (2d) 11; Perkins v. Jackson et al., 276 Ky. 217, 123 S. W. (2d) 247.

As to appellant's first contention that the answer was not good on demurrer, we are of the opinion that the paragraph of the answer setting forth the plea of satisfaction and accord concerning the settlement of the estate of W. L. Pennington set forth facts and circumstances sufficient to constitute a basis for the plea.

We are also of the opinion that the chancellor committed no error which was substantially prejudicial to appellant's rights in transferring the cause from the ordinary to the equity docket since the issue between the parties was an equitable one. In the case of Cornett v. Burchfield, 142 Ky. 357, 134 S. W. 466, it was pointed out that the only issue between the parties was as to whether Morton Arnett had been advanced by his father his entire share of an estate, and that that issue was strictly one in equity. In the case at bar the principal issue between the parties is whether or not appellant was advanced the principal part of his share in his father's estate, as evidenced by the notes bearing date of September 2, 1925 and April 20, 1927. In the Cornett Case the action was filed as an ordinary action, but was treated and tried by both parties as an action in equity. In the case at bar the action was filed as an ordinary action, but, as we have noted, it was transferred to the equity docket by the chancellor, and by agreement of the parties the cause was assigned for oral hearing before the chancellor. It was left with the chancellor as to whether any issue should be submitted to the jury.

We are constrained to conclude, therefore, for the reasons given herein, that the judgment should be and it is affirmed.