## Wilkins et al. v. Nieberger et al.

January 17, 1947.

Stephens L. Blakely and John H. Klette for appellant.

Rogers & Rogers for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

We have before us a controversy concerning a passway.

The Wilkins acquired title to the farm over which the involved passway leads on December 31, 1943, just five months before bringing this action to enjoin the appellees, Niebergers, from using the passway. The Wilkins' immediate grantors purchased the farm from Alice

S. Hallam on January 17, 1929. In their petition the Wilkins stated that the defendants, Nieberger and wife, without right or authority by law, but against the rights of the plaintiffs, have gone upon plaintiffs' property unlawfully and have attempted to take possession of a strip of ground, using the same as a right of ingress and egress to and from their own property.

The defendants traversed the allegations of trespass and made paragraph 2 of their answer a counterclaim, affirmatively alleging that they were the owners of a farm consisting of approximately 65 acres, improved with a residence, barn and other out buildings; that plaintiffs' farm was situated between their farm and the public highway, and that they had a prescriptive right to use the passway across the appellants' farm.

Nieberger acquired title to his farm from the executor of his mother's will on June 17, 1944. Nieberger's mother acquired title to the land by deed bearing date September 2, 1908. Thus, it will be noted that the mother of Herbert Nieberger had possession of the dominant estate for 25 years before the Wilkins acquired title to the servient estate, and 21 years before Wilkins' immediate grantors obtained title to it. The Wilkins insist that the right, if any, to the use of this passway was permissive. Niebergers insist it is a prescriptive right. Proof was heard in open court on this issue and the cause was submitted for judgment. The court found in favor of the appellees, and adjudged to them the use of the passway, and perpetually enjoined the appellants from interfering with appellees in the use of it. From that judgment the matter has been brought here on appeal.

The appellees relied upon the testimony of 8 witnesses in assuming the burden of proving that the passway had been used by owners of the dominant estate openly, adversely, and without hindrance or let for 15 years or more before the appellants ever became the owners of the servient estate.

The witness, Geiger, a man 86 years of age, who was born on the servient estate; had lived in the immediate vicinity all his life; had worked on the dominant estate and had rented and farmed the servient estate, testified that the road had been there for more than 75 years, and

that, throughout the 75 years he had known the passway, it was continuously used as a means of going to and from the dominant estate, and that the right to its use had never been called into question or interfered with until the appellants objected to its use. Others testified to the same effect, except they did not go back quite as many years.

The appellants testified that they had lived in the vicinity about 7 years before they purchased the servient estate and admitted that the passway was clearly indicated by marks of travel at the time of their purchase. They further testified that the appellees were living upon the servient estate when they bought it. They testified that, the appellees while negotiating for the purchase of the dominant estate, asked permission to use the passway in event the deed was consummated. This, Nieberger, specifically denied. They testified that they consulted an attorney and had him draw up an agreement obligating Nieberger to pay them $75.00 per year for the use of the passway and to keep it in repair. Nieberger refused to sign this agreement.

The testimony of the appellants appears to relate entirely to conversations and transactions had long after the passway had, through long, unexplainable, and uninterrupted use, become an appurtenant to the dominant estate. It appears to be confined entirely to the period of time commencing with the purchase of the servient estate by McLane and others on January 17, 1929, and extending to the filing of this action. There is, however, some testimony that a number of years ago some of the witnesses, when boys, had been ordered off of the servient estate. On cross-examination these witnesses stated they were on the land picking berries or just running about. But nowhere do they state they were ordered not to use this passway.

The witness, Morlidge, testifying for the appellants, stated that in 1929 he and 4 others purchased from Alice S. Hallam the servient estate for subdivision purposes and that he surveyed and made a plat of the same in 1929 with the idea of selling it in town lots. This project, however, was later abandoned. He testified that after having purchased the servient estate he discovered the passway and became aware of the use that Mrs.

Fischer, the mother of the appellee, who then owned the dominant estate, was making of the passway. He stated that he told her she could have permission to use the passway until she was notified to the contrary. It will be noted that Mrs. Fischer had bought this dominant estate in 1908, and that a period of 21 years had elapsed after she had bought it before Morlidge and others had bought this land. He further testified that in 1929, once in 1930, once in 1931, once in 1936, and once in 1937, he blocked, or at least attempted to block, the use of this passway by nailing up gates across the same. On cross-examination he admitted that the gates were forced open and the use of the passway continued without further attempted interruptions until the appellants bought the servient estate.

Our task is to determine whether or not, under the facts as above set out, the court below was justified in finding that appellees had a prescriptive right to the use of the passway.

Appellants contend that the evidence establishes the passway to have been used by permission only. It is quite readily admitted in brief of appellants that an unexplained use for the statutory period creates the presumption of a grant. They insist further, however, and rightly so, that such presumption creates only a prime facie case, rebuttable by facts and circumstances.

In Cupp et ux. v. Gregory et al., 293 Ky. 289, 168 S. W. 2d 1001, it was said: "As pointed out in Cox v. Blaydes, 246 Ky. 121, 54 S. W. 2d 622, the long, continued and uninterrupted use of a passway raises the presumption that the use was under a claim of right, and casts upon the owner of the servient estate the burden of showing that the use was merely permissive."

In Smith v. Fairfax, 180 Ky. 12, 201 S. W. 454, 455, it was said: "But in order to overcome the presumption, arising from the long and uninterrupted use of the passway, that it was enjoyed under a claim of right, there must be satisfactory evidence that its use was originally acquired by permission."

The testimony above showed that the passway had been there for a period of 75 years or more, and that there had been a continued and uninterrupted use

throughout that period of time, or until the appellants and their immediate grantors acquired title. And, as stated heretofore, the testimony concerning any objection to the use of, or permission to use the passway, related to a period subsequent to that within which the statutory time had already run. Since the right had been fully established before that time, it certainly cannot be lost by this attempted interruption. See Daniel v. Shaver, 184 Ky. 674, 212 S. W. 913, and also Rogers v. Flick, 144 Ky. 844, 139 S. W. 1098.

Some mention has been made in briefs as to the gates erected across the passway at its termini. That in itself is not inconsistent with the acquiring of an easement. See Bryant v. Penn et al., 280 Ky. 428, 133 S. W. 2d 521, and Rees v. Dixon, 291 Ky. 379, 164 S. W. 2d 950, 143 A. L. R. 1398.

Upon the entire evidence we cannot say there is such conflict as would leave us in doubt. Were the converse true, that fact in itself would, under formerly pronounced rules, justify us in following the findings of the chancellor. See Pennington v. Pennington's Adm'r, 276 Ky. 353, 124 S. W. 2d 460. On the contrary, we think appellants' evidence insufficient to establish their contention of permissive use. On the whole the evidence abundantly supports the chancellor's judgment. It is affirmed.