## Sandman et al. v. Highland et al.

January 31, 1950.

Joseph P. Goodenough, Judge.

Bert J. King and Ralph P. Rich for appellants.

Howell W. Vincent for appellees.

JUDGE KNIGHT—Affirming in part, reversing in part.

I. Appellees, ten in number, brought this suit against appellants to enjoin them from severing, destroying or impairing a certain passway extending over property of appellants, the use of which is claimed by appellees, and for $500 damages for wrongful and illegal acts alleged to have already been committed. Although denying appellees damages, appellants were permanently enjoined from interfering with appellees' use of the road and appellants were directed to restore the road to the same condition it was in before they built another roadway across it and to restore the old grade. It was further adjudged that all appellees, including Cason and Monson, were entitled to use the old roadway referred to in the pleadings. Appellants appeal from that judgment.

Appellees are the owners of small acreage tracts of land lying in Kenton County near the town of Independence. The lots or tracts are either contiguous to or lie near each other and are located in the Hattie Colston Subdivision, and all titles trace back to and each is a part of a larger tract known as the Winston Estate. The large Winston tract was located on the Taylor Mill Pike. When William Winston conveyed to Hattie Martin (Colston) the 33¼ acre tract which later became the Colston Subdivision, he granted her a passway over his remaining lands to the Taylor Mill Pike in the follow-

ing language: "The grantee herein her heirs and assigns shall have the right to the use as such of a passway or road 16½ feet wide leading from her southern most line to said pike, said passway or road being that old road long used as such passway to said old homestead; and grantee her heirs and assigns shall bear a proportionate share of the cost of maintaining such road."

It is conceded by appellants that all the appellees, except Allen Monson and wife and Marion Cason and wife, have a passway over land belonging to appellants, which also was part of the old Winston tract, to Taylor Mill Pike. But appellants contend that the Casons and the Monsons have no right to the use of this passway from their tract to the Taylor Mill Pike and they make that point the first point in the appeal from the decision of the lower court which held that they did have such right. It is true that the Monson and Cason tracts trace back to the Winston tract through a different chain of title than do the tracts belonging to the other appellees, and their right to the passway is not spelled out as clearly as are the others. However, we agree with the Chancellor that "the proof and exhibits prove that all of this property, including the property of Sandman (appellants) was burdened with this easement or roadway in favor of Hattie Martin (Colston). The clause in the deed from Winston to Hattie Martin (Colston) giving to her, her heirs and assigns, the right to use this road from her southernmost line to the Taylor Mill Pike, which includes the Sandman property, was an easement running with the land. Mannion v. Adkins, 199 Ky. 241, 250 S. W. 974; Buck Creek Railroad Co. v. Haws, 253 Ky. 203, 69 S. W. 2d 333. When Sandman purchased the property he took it with the burden of the easement over and through his property."

The lower court further held, correctly we think, that all the appellees, including Monson and Cason, have a prescriptive right to use the passway over the land of appellants, basing his decision partly on the testimony of Scott Winston, 83 years of age, that the old road had been used for more than 70 years although it had remained a private road up to the time his uncle, William Winston, sold part of the land to Hattie Martin (Colston) on May 12, 1923. The lower court found that ap-

pellees and their predecessors in title have been using this roadway openly, adversely and without hindrance since that time, or more than 15 years. Wilkins v. Nieberger, 303 Ky. 662, 198 S. W. 2d 986.

But even if it should be held that Cason and Monson have no right to use the passway, we fail to see where appellants would be advantaged thereby or that it would have any effect on the main point involved in this appeal. Since it is conceded that the other appellees have the right to use the passway and since the use of it by Cason and Monson, owners of contiguous property, would add little to the burden on the passway, their use of it has little practical effect on the second or main point on this appeal, which we now consider.

II. That part of the old passway involved in this litigation runs substantially parallel with the Taylor Mill Pike and about 250 feet therefrom. Appellants own some acreage property facing on that pike and extending back in a westerly direction past the old roadway heretofore referred to. In order to subdivide this property and to sell off building lots and small home sites, appellants have started construction of a new roadway 50 feet wide extending west from Taylor Mill Pike through their property which they propose to subdivide. In doing so and in order to open all the property to easy access to the pike, it was necessary for the new road to cross the old road at their point of contact. The new road being built to serve the subdivision had to meet certain standards of width and grade required by the Zoning Commission and, in order to do this and maintain the established grade of the new road, it was necessary to change the grade of the old road lowering it at its highest point a maximum of 5.8 feet as shown by the testimony and map of the engineers. In order that the change in the grade of the old road might be more gradual, the engineers started the grading on the old road 25 feet south of the new road, continuing it through the 50 feet of new road and extending it 25 feet north of the new road, thus changing the grade of the old road a distance of 100 feet and lowering it from 5.8 feet in the center to nothing at each end of the new grade. The resulting effect is that the changed grade of the old road will be the same as that of the new road over the 50 feet of its intersection by the new road with gradual changes for a distance of 25 feet on each side of the new road.

In making this change in the grade of the old road some interference was caused to its users for a few days only and, according to the evidence of appellants, rock surface taken from the old road was replaced on the new grade with two additional truck loads of creek gravel and a truck load of screenings which resulted in as good a roadbed as existed before and which would have been further completed and improved but for the injunction issued against them. According to the evidence of appellants, including drawings filed as exhibits by their engineers, the new grade on the old passway is better and easier to travel by those using it than before the change. The engineers testified that the old road carried a grade of 20% from the center of the present intersection south toward the Willen property whereas after the regrading there is no grade exceeding 10% in the 100 feet regraded. In other words, whereas the users of the old road had to travel over a hump including a 20% grade they will now travel through a dip in the road no part of which will have a grade in excess of 10%. No change in the width of the old road was made by the grading. Some of this evidence is contradicted by appellees but their evidence is based largely on the testimony of lay witnesses and they produce no testimony of qualified witnesses to contradict the testimony of the engineers who testified for appellants.

Appellants are owners of their property in fee and as such are entitled to use it in a lawful manner, as in this case to build a new road leading to other property belonging to them which they wish to develop. But in doing this as the owners of the servient estate they cannot destroy the rights of the dominant estate created by the easement over their property. The servient owners must permit the free and unrestricted use of the passway by the owners of the dominant estate while the latter must use their right so as to be as little burdensome as possible to the servient estate. Jenkins v. Depoyster, 299 Ky. 500, 186 S. W. 2d 14; Wells v. North East Coal Co., 255 Ky. 63, 72 S. W. 2d 745; Kentucky & West Virginia Power Co. v. Elkhorn City Land Co., 212 Ky. 624, 279 S. W. 2d 1082, and cases therein cited. In recognition of these mutual duties and obligations we have held that gates may be maintained across the passway of the dominant estate if such gates are necessary to protect the owner of the servient estate in the full use and

enjoyment of his property or some portion thereof. Mann v. Phelps, 269 Ky. 493, 107 S. W. 2d 288. It has also been held that owners of the servient estate may make changes in the location of the dominant estate where the latter is not seriously affected. Terry v. Boston, 246 Ky. 222, 54 S. W. 2d 909. As was said in that case: "It will be seen that the issue between the parties did not involve the existence of the passway, but merely the right of the owners of the land over which it passed to change its location. No drastic change was made, but a mere convenient variation was adopted. The new road paralleled the old one, and was no great distance from it at any point. Slight deviations from the established easement are to be expected, and do not affect the rights of either party."

Likewise in the present case the existence of the passway is not involved but merely the right of the owner of the land over which it passed to change its grade so that it may be intersected by a new road which the owner desires to build for service to his remaining property.

From a careful consideration of all the testimony we are convinced that the change in the grade in the old road where it is intersected by the new 50 foot road does not adversely affect the users of the old road. Indeed it appears to us from all the evidence that they will be benefited by having a new road 50 feet wide on which to reach the Taylor Mill Pike, when they reach the intersection, instead of continuing over the old 16½ foot circuitous passway to the pike. Of course, the old roadway must be put in as good condition, as to surfacing, as it was before it was torn up so that appellees may continue its use if they so desire.

Since we are of the opinion that appellees were not adversely affected by the change in the grade of the old passway, made necessary by the construction of the new road, we think the judgment of the lower court was in error to that extent.

So much of the judgment as decrees that appellees Cason and Monson have the right to use the old passway is affirmed. So much of the judgment as requires the restoration of the old road to its former grade is reversed.