Eugene HERNDON, Appellant,

v.

Tom McKINLEY, Appellee.

Court of Appeals of Kentucky.

Aug. 24, 1979.

William A. Johnson, Sullivan & Johnson, Taylorsville, for appellant.

John D. Dale, Jr., Coots & Dale, Taylorsville, for appellee.

Before HOGGE, HOWERTON and VANCE, JJ.

HOWERTON, Judge.

Herndon initiated this action to enjoin McKinley from crossing his land, destroying his gates, and interfering with his farming operation. McKinley filed a counterclaim asserting a right-of-way by deed over Herndon's farm, and he claimed that the gates, chains, and locks interfered with his use of the passway. The Spencer Circuit Court entered a summary judgment dismissing Herndon's petition and enjoining him from erecting more than two gates on the passway, one at the property line between the parties, and one at the junction of the passway with highway 55.

Herndon argues that the 1886 deed did not extinguish his property rights in the 14-foot right-of-way, except for the specific grant in the deed. Herndon also contends that the dominant owner of a passway may not prevent the erection of gates by the servient owner when they are necessary to protect the servient owner's full use and enjoyment of the land. These propositions are basically true, but they will not change the result in this case.

The granting clause in the deed reads in part as follows: ". . . that a passway is granted and guaranteed . . . to the pike as said passway now runs . . . except the gate on the dividing line may be changed as agreed on . . . ." There is no longer an issue concerning the erection and maintenance of a gate on the property line between the parties and at the boundary adjoining the highway. The controversy on this appeal involves a third gate which has been erected across the passway inside the Herndon property.

Herndon did not plead, nor prove, that a third gate ever existed at any location. McKinley filed an uncontroverted affidavit stating that only two gates had existed since he purchased the dominant estate in 1971. The trial judge did inquire if a third gate had existed at any point for fifteen (15) years to establish a right by adverse possession. The judge was informed that such a gate had existed at one time, but at another location. Herndon offered no further proof of that fact.

There is no hard and fast rule governing if and when the owner of a servient estate may erect gates across a passway on his land. The manner of creation of the passway is one factor bearing upon the right to erect one or more gates. Generally speaking, different rules do apply to passways created by adverse use as opposed to a passway created by an express grant, reservation, or devise. *Whitaker v. Yates*, 200 Ky. 530, 255 S.W. 102 (1923).

We have an express grant in this case, but except for the notation that the gate on the dividing line may be changed by agreement, the instrument is in general terms with no specific stipulation as to gates. *Maxwell v. McAtee*, 48 Ky. (9 B. Mon.) 20 (1847), is considered to be the landmark case on easements of this nature. The case has been cited on numerous occasions. The original rule reads: "The grant of a passway in general terms, over a particular part of the grantor's land, does not imply a negation of his right to erect gates at the termini of the way in entering and leaving his land." The court reasoned that the mere grant of a right-of-way passes nothing more than its terms imply. Every right in the land not inconsistent with its use under the grant remains in the grantor, but the grantor's use of the land must not lessen the rightful enjoyment of the passway.

The "termini rule" has been amplified and continued by many subsequent cases. McKinley cites *Reed v. Flynn*, 205 Ky. 783, 266 S.W. 644 (1924), for the proposition that when a contract is silent as to gates, the erection of gates across a passway at any place other than its termini will not be permitted, unless conditions and circumstances show it was the intention of the parties that the owner of the servient estate could erect gates at other places across the passway. This rule was the basis for

the decision of the trial court. Since only two gates were found to exist from the beginning, it was reasoned that the servient owner was limited to the two gates at the "termini."

We frankly fail to see the full wisdom of the "termini rule," because if all things are otherwise equal, a gate erected anywhere along the passway is no greater obstruction than the same gate erected at either end. The location of a gate may be a factor for consideration, but the location itself is of doubtful importance as the sole basis for a decision.

What we are concerned with in this case, however, is a third gate. At the time of the 1886 grant, it appears that only two gates obstructed the passway. Any additional obstruction could give the grantee, his successors, and assigns, less than what was probably bargained for.

We must also consider the rights and needs of the owner of the servient property, as well as the reasonableness of the erection of an additional gate. A similar conveyance was considered in *Sandman v. Highland*, 312 Ky. 128, 226 S.W.2d 766 (1950). *Sandman* was not concerned with gates, but with a temporary disruption in use and a permanent change in grade of a passway. The decision prescribed a doctrine of reasonableness and a balancing of the rights, needs and interests of the parties. *Sandman, supra*, at 132, 226 S.W.2d at 768, reads: "The servient owners must permit the free and unrestricted use of the passway by the owners of the dominant estate while the latter must use their right so as to be as little burdensome as possible . . ."

Herndon may have the use and enjoyment of the 14-foot passway, but only to the extent that his use does not unnecessarily and unreasonably interfere with the rights granted to McKinley's predecessors in title. The third gate erected by Herndon is obviously a burden on the use of the passway by McKinley. No proof was presented to show why Herndon determined that a third gate was essential to the use and enjoyment of his land.

Herndon has requested, as an alternative to reversal, that we remand the case to the trial court to provide him an opportunity to prove that a third gate did exist at another point on the passway. Without deciding whether the establishment of an additional gate at one location by adverse use entitles one to move the gate to another location along a passway, we must nevertheless conclude that the proper time for attempting to prove adverse use was when the case was before the trial court.

Since the facts are not otherwise in dispute, we conclude that the trial judge did not abuse his discretion, that the correct result was reached, and that the case was properly disposed of by summary judgment. *Continental Casualty Co. v. Belknap Hardware & Manufacturing Co.*, Ky., 281 S.W.2d 914 (1955).

The judgment of the trial court is affirmed.

All concur.